BAILEY ET AL. V. JOHNSON, SHERIFF, ETC.

A voluntary transfer by a debtor to one of his creditors of certain horses and mules and wagons used by him at his saw-mill, in trust to sell the same, and to apply the proceeds in payment of certain preferred creditors, the balance being accepted by the assignee in settlement of his own claim, is not void as to other creditors under the statute (Gen. St. § 1523), where a bill of sale of the property was executed by the debtor, and delivered to the assignee, and formal possession of the property surrendered to him one day, and the property removed by the assignee from the mill the next. In replevin by such assignee against creditors who attached the property after it had been removed from the mill, *held* error to take the case from the jury.

### *Error to Superior Court of Denver.*

THE plaintiffs, Bailey & Allen, kept a feed-stable and *corral* in Denver, in 1882. One Alexander Kemp, who was engaged in the lumber business on Buffalo creek, in Jefferson county, at a point about thirty-five miles from Denver, became indebted to the plaintiffs for hay in the sum of about $241. On the 29th of May, 1882, Allen, one of the plaintiffs, went up to Buffalo creek for the purpose of collecting this bill. Kemp appears to have had a store, a saw-mill and a blacksmith shop on Buffalo creek, but the saw-mill had stopped running some days before Allen's arrival, and the business of lumber-making had been discontinued. The teams, harness and wagons previously used in the business were found in Kemp's stables and *corrals*, and the men who had been employed as drivers and otherwise were still in the lumber camp, but out of employment. Kemp owed them various sums for wages earned, and had executed to them bills of sale of portions of the above-mentioned stock by way of security. No delivery of any portion of the stock appears to have been made under any of them. Allen, upon his arrival in the lumber camp, entered upon negotiations for the payment of the claim due his firm.

Kemp informed him that he had no money, and all he could do would be to sell him the stock (horses, mules, harness, wagons, etc.). Allen replied that his firm could handle the stock, but he did not know that they could get for Kemp what it was actually worth, or any given amount of money; that they could sell it for him, and pay themselves out of the money realized. Kemp said he had given bills of sale to men in his employ driving teams and working for him; and, if he sold the stock to plaintiffs, they must secure these men. The precise sums due these men had not been ascertained; but it was estimated at $705 to the laborers, and $700 jointly to the foreman, Morrell, and the book-keeper, Adgate, making the total indebtedness to be satisfied out of the property about $1,646. Allen estimates the property to have been worth about $2,000. It was finally agreed that the property should be sold and delivered to the plaintiffs on the following terms: It was to be taken in liquidation of the plaintiffs' claim. The plaintiffs were to pay the teamsters and laborers on the following day, in Denver, the several amounts called for by their time-checks, which were to be made out that evening; the balance to be realized from the sale to be made by the plaintiffs was to be paid to the foreman and book-keeper on account of their demands, and for this balance Allen gave them an open acceptance on the spot. He says he would have paid the laborers at the same time if the sums due them had been ascertained; but it was arranged that they should bring the stock down next day, and get their money then. These negotiations were conducted in the presence and hearing of the men holding the liens, and without objections from any of them. An inventory was then taken of the horses, mules, harness and wagons. A bill of sale thereof was executed by Kemp, and delivered to Mr. Allen, and formal possession of the property surrendered to him. Allen then constituted the book-keeper, Adgate, his agent to assume and

hold possession of the property for the plaintiffs until the next day, when he was to send it to Denver by the men to whom the time-checks were to be issued; written instructions to this effect being given the agent. Included in these negotiations was some necessary shoeing of horses, and necessary repairs to the wagons, which were to be done before starting the stock upon the road.

The business having been completed to the satisfaction of all concerned, Mr. Allen returned to Denver, and early next morning, in accordance with agreements and instructions, the teams were put in motion for Denver. When they had reached a point on the highway about five miles out from camp they were overtaken and the property seized by the defendant Johnson, sheriff of Jefferson county, upon a writ of attachment issued out of the district court of Arapahoe county, in an action wherein David C. Dodge and Allen C. Fuller were plaintiffs and said Kemp and one E. Bowen were defendants. The plaintiffs brought the present action in the district court of Jefferson county to recover possession of the property attached, and, by stipulation of parties, the venue was changed to the superior court of the city of Denver. At the close of the testimony upon the trial, counsel for the defendant moved the court to instruct the jury to return a verdict for the defendant, on the ground that the statute declares that a bill of sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by an immediate delivery, shall be assumed to be fraudulent and void; and this, being a presumption of law, is a question for the court and not the jury. The court sustained the motion and dismissed the action, to which ruling the plaintiffs duly excepted.

Mr. L. C. ROCKWELL, for plaintiff in error.

Mr. E. O. WOLCOTT, for defendant in error.

· BECK, C. J. The principal error assigned relates to the withdrawal of the case from the consideration of the jury, when upon the trial on the merits in the superior court, by an instruction to return a verdict for the defendants. It is inferable from this action that, in the judgment of the court, the plaintiffs, Bailey & Allen, had failed to establish a legal ownership or right of possession of the property described in this writ of replevin. The ground of the motion was that the requirements of the statute of frauds had not been complied with in the sale and delivery of the property to the plaintiffs. It was not claimed that the transaction was fraudulent in fact, but that immediate delivery of possession not having been made upon execution of the bill of sale, as required by the statute, the law presumed the transaction to be fraudulent and void.

The statutory provisions referred to, being the fourteenth section of the statute of frauds, are as follows:

"Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith; and this presumption shall be conclusive." Gen. St. 1523.

Addressing our attention to the question of the sufficiency of the delivery and change of possession, it is proper, in the first instance, to consider the nature of the transaction, as the same appears from the testimony of both parties. While the form of the transaction was a sale to Bailey & Allen, the testimony clearly shows it to have been a transfer of the property to them, in the nature of an assignment, charged with certain trusts. The trusts were that the property should be sold by Bailey &

Allen, to whom it was transferred by bill of sale, and that the proceeds of sale should be appropriated to the payment of the following debts of the vendor or assignor, viz.: The debt due Bailey & Allen, the debts due the teamsters and workmen, and the debts due the foreman and book-keeper. It would seem, from the testimony, that the property was in fact taken in liquidation of the claim of the plaintiffs, and that the claims of the teamsters and laborers would also have been paid at the time of the transfer if the amounts due them had been then known. But the plaintiffs were not bound, by their agreement with Kemp, to pay Morrell and Adgate any definite sum. These men appear to have been deferred creditors in the transaction, and were to receive, as per their acceptance, whatever balance there might be of the proceeds of sale to be made by plaintiffs over and above the amounts due the other creditors mentioned.

In support of the proposition that there was not a sufficient delivery of the property, nor such a continued change of possession as the statute requires, we are referred to that portion of the testimony which discloses that Kemp's employees held bills of sale of the property, and that the stock, as counsel allege, was in their possession when it was seized in attachment by the defendant. A review of the testimony fails to show any delivery whatever of the property by Kemp to his employees, as purchasers, under the bills of sale, or that the latter had ever demanded a delivery. The employees do not appear to have claimed as purchasers, nor to have construed their bills of sale as evidence of purchase, but as liens. held to secure payment of the wages due them, respectively. The delivery, therefore, to Allen at the camp was good as to all the parties present and consenting to it, and he and his partner took the property charged with the several trust specified.

Had the sheriff arrived in camp that day, and executed his writ of attachment while the animals and other prop-

erty remained on the grounds, and in the stables and *corrals* of Mr. Kemp, the case would have presented a very different feature. But no levy of the writ was made until some time next morning, when the stock was *en route* for Denver, and distant about five miles from camp. Both the title and the possession were then in the plaintiffs. Their agent, Adgate, in obedience to written instructions from Allen, had placed these men, who held time-checks from Kemp, in charge of the property for a special purpose,— that of removing it to the stables of the plaintiffs in Denver. Having accepted the charge, they became, for the purpose mentioned, the agents of the plaintiffs. The property was therefore legally in the possession of the plaintiffs at the time of the levy of defendant's writ. The requirements of the statute in question were, in our judgment, duly satisfied. On the day previous to the seizure Kemp had these goods and chattels in his possession and under his control. While so possessed of them, he conveyed the title, and surrendered the possession thereof, to the plaintiffs, for lawful purposes, and for a sufficient consideration. The plaintiffs, through their agents, had assumed the full dominion and control of the property. The formal delivery at the camp became, as to all persons, a valid delivery by the removal of the property from the premises of the former owner by those who constituted themselves agents of the plaintiffs for that purpose. There was nothing in these circumstances to mislead the defendant, but much to put him on the inquiry as to the ownership of the property at the time of the seizure. The saw-mill had been shut down, and the lumber business discontinued several days before. The men and teams were not engaged in their usual employments. It would seem that these facts were known to the defendant, for he admitted upon the trial that he knew the teams were going away on that morning, and that he had arisen early, and followed and overtaken them.

But if we assign to the transaction its true legal character, that of a partial assignment for the benefit of creditors, it is equally supported by the evidence. It was a voluntary transfer by Kemp, the debtor, without compulsion of law, to Bailey & Allen, in trust to sell the same, and to apply the proceeds in payment of certain preferred creditors. And, as before stated, those interested in the property by virtue of liens stood by and consented to the transfer. That partial assignments of this nature are valid under our statute was decided by this court at the last December·term, in the case of *Campbell v. Colorado Coal & Iron Co. ante*, p. 60.

The court erred in withdrawing the case from the consideration of the jury upon the facts and the law, and in directing a verdict for the defendant in error, for which error the judgment is reversed and the cause remanded.

*Reversed.*