[No. 7,340.—Department Two.]

# ECLIPSE GOLD AND SILVER MINING COMPANY v. JAMES S. SPRING ET AL.

MINING PATENT—CONSTRUCTION OF—ADVERSE CLAIM—CONSTRUCTION OF STATUTE.—A patent for a mining claim issued under the act of May 10, 1872, entitled "An Act to promote the development of the mining resources of the United States" (§ 2322 R. S. U. S.), contained the following condition: "That the grant hereby made is restricted to the land hereinbefore described as lot No. 37, with 2,400 linear feet of the Eclipse quartz mine, vein, lode, ledge, or deposit, and for the length aforesaid throughout its entire depths as aforesaid, together with all other veins, lodes, ledges, or deposits throughout their entire length as aforesaid, the tops or apexes of which lie inside of the exterior lines of said survey, *as against all persons claiming under location made upon such other veins, lodes, ledges, or deposits subsequent to May 10, 1872.*"

*Held:* This excludes from the grant any other ledge located by parties other than the grantees prior to May 10, 1872, although the top or apex of such other ledge may lie inside of the exterior lines of the premises granted.

ID.—ID.—ID.—ID.—The act in question provides that when an application for a patent is properly filed, notice thereof shall be published for sixty days, and if no adverse claim is filed before the expiration of that period, "it shall be assumed that the applicant is entitled to a patent, * * * and that no adverse claim exists."

*Held:* This provision does not apply to adverse claims existing prior to the date of the act, but to such claims only as should arise after its passage.

ID.—ID.—ID.—ID.—Action by patentee of a mining claim under the act referred to, for trespass and an injunction. The *locus in quo* was outside of the boundaries described in the plaintiff's patent, but formed part of a ledge—known as the Good Easter ledge—which had its top or apex within those boundaries. The defendants offered to prove a valid location of the Good Easter ledge by their predecessors in title prior to the date of the act. *Held:* The Court erred in excluding the evidence.

APPEAL from a judgment for the plaintiff, in the Superior Court of the County of Placer. MYERS, J.

*C. A.* and *C. Tuttle,* for Appellants.

A patent can only convey what the statutes permit to be conveyed. We do not attempt here to attack the patent, but to show that it did not convey our ledge. The adverse claim spoken of in § 2326 R. S. U. S. is an adverse claim to that for which, under the statutes, the applicant might obtain a patent. (*McLaughlin* v. *Powell,* 50 Cal. 64.)

No brief on file for Respondent.

Sharpstein, J.:

We must assume in this case that the appellants' grantors made a valid location of the Good Easter ledge, and the respondent's grantors of the Eclipse ledge prior to the passage of the Act of Congress of May 10, 1872. And if it was material to the defense of the action, that these facts should be proved, it was error for the Court to reject the offer of the appellants to prove them by competent testimony. The respondent claims that such proof would have been wholly immaterial, because the United States, in 1873, granted by a patent then issued to respondent's grantors, a certain tract of mineral land which included within its exterior boundary the top or apex of the Good Easter ledge, as well as the Eclipse ledge, and that by the terms of the patent it granted not only the ledge located by the grantees in said patent, but also all other ledges, the tops or apexes of which were inside of the boundary lines of the tract so granted. The apex of the Good Easter ledge was within said lines, and this action was brought to restrain the appellants from working upon said ledge, and to recover damages for ore taken therefrom by them. The respondent recovered judgment as prayed in its complaint.

Prior to May 10, 1872, each locator was entitled to one ledge only. Before that time neither could have obtained a patent for more than one. Under the act of May 10, 1872, a patentee is entitled to all the ledges having their apexes within the surface lines of the land granted to him. So that the real question in this case is, how were the rights of those who made their locations prior to the passage of that act affected by its passage? It seems to us that the predecessors of the appellants had acquired rights or interests in the ledge which they had located prior to the passage of that act, and if so, the act itself does not affect them. For it expressly provides: "That nothing contained in this act shall be construed to impair, in any way, rights or interests in mining property acquired under existing laws." And the patent itself contains the following condition:

Cal. Reps. LIX—20

"That the grant hereby made is restricted to the land hereinbefore described as lot No. 37, with two thousand four hundred (2,400) linear feet of the Eclipse quartz mine, vein, lode, ledge, or deposit, for the length aforesaid throughout its entire depths, as aforesaid, together with all other veins, lodes, ledges, or deposits, throughout their entire length, as aforesaid, the tops or apexes of which lie inside of the exterior lines of said survey, as against all persons claiming under location made upon such other veins, lodes, ledges, or deposits *subsequent* to May 10, 1872."

*Expressio unius est exclusio alterius.* Does not that exclude from the grant to the locators of the Eclipse ledge, any other ledge located by parties other than said grantees, prior to May 10, 1872, although the top or apex of such other ledge may lie inside of the exterior lines of the premises granted?

Were it not that the act of May 10, 1872, provides, that when an application for a patent of mineral land is properly filed, notice thereof shall be published for sixty days, and, if no adverse claim is filed before the expiration of that period, "it shall be assumed that the applicant is entitled to a patent, * * * and that no adverse claim exists," the solution of this question would be comparatively easy. The grantors of the appellants did not file an adverse claim within the period prescribed, and it is claimed by the respondent that by not doing so they waived any adverse claim which they might have had to so much of the Good Easter ledge as lies within the exterior lines of the premises granted by the patent. If the rights or interests of the appellants had been acquired subsequent to May 10, 1872, their failure to file an adverse claim within the prescribed period would, perhaps, have constituted a waiver. But their rights or interests were acquired under existing laws previous to that time, and the act under which the respondent claims expressly declares that rights so acquired shall not be impaired by it. The application for the patent under which respondent claims was based upon a location made under the act of 1866, and under that act the respondent's grantors could not have obtained a patent for any other than the Eclipse ledge. A patent issued to them at any time before May 10, 1872, would not have affected the claim of the appellants or their grantors to the Good Easter

ledge. Such were the relative rights of these parties up to the time of the passage of the act of May 10, 1872. Each had acquired under existing laws a right to a single ledge. And the act of 1872 must be so construed as not to impair any right which either had so acquired. From which it would seem to follow, that a right expressly reserved by the act was sufficiently secure without the assertion of it by filing an adverse claim, which could result in securing nothing beyond what was already secured by the act itself. If the act is so construed as to operate only prospectively, as all acts should be, unless the intention that they shall operate retrospectively is apparent, effect may be given to every part of it. Otherwise, the provision, that it shall not be so construed as to impair *in any way* rights or interests acquired under existing laws, seems to be redundant.

The conclusion at which we have arrived renders it unnecessary to pass upon other questions raised by the appellants. The other alleged errors are all attributable to the erroneous theory held by the Court below upon the main question in the case, and will not be liable to recur if a new trial shall be had upon the theory which we have indicated to be the correct one.

Judgment reversed.

THORNTON, J., and MORRISON, C. J., concurred.