## SEPTEMBER TERM, 1889.

### LEE .ET AL. V. STAHL.

1. RES ADJUDICATA, WHEN HIGHER AUTHORITY THAN STARE DECISIS.—
When the law governing·a case has been once declared by the opinion of an appellate court on a direct appeal or writ of error, such opinion, on the retrial of the same case upon the the same state of facts, is higher authority than *stare decisis;* it is *res adjudicata,* so far as the particular action is concerned.

2. WHAT RIGHTS NECESSARY TO PROTECT BY ADVERSE PROCEEDINGS —
CROSS-VEINS.— A true cross-vein is excepted out of the grant of the patent by virtue of section 2336, Revised Statutes of the United States. And, whether a junior or a senior location, it is not affected by failure to adverse, except at the point of actual lode intersection. But section 2344 does not, *ex proprio vigore,* reserve out of the grant rights other than cross-veins acquired prior to the act of 1872, but secures the protection of such rights to those who avail themselves of the adverse procedure prescribed by the act itself.

3. MEANING OF CROSS-LODES.— The crossing of lodes does not mean the crossing of two patents, but the actual crossing of the two veins themselves.

4. HOW VEINS MUST UNITE TO BE WITHIN EXCEPTION OF SECTION 2336.
Veins which unite but do not cross each other are within the exception of section 2336 when they unite on the "dip" or in their downward course; but not when they unite on the "strike," or on their horizontal extension. The word "below," in section 2336, does not mean "beyond."

5. CONGRESSIONAL DESIGN TO HAVE ALL CONFLICTS ADJUSTED BY ADVERSE PROCEEDINGS.— It was the design of the act of 1882 (sections 2325, 2336, R. S. U. S.) to have all conflicts, so far as practicable, settled by the issuance of the patent through the adverse proceedings therein provided for.

*Appeal from District Court of Jefferson County.*

Messrs. BELFORD & WIKOFF, for appellants.

Messrs. C. C. POST and R. S. MORRISON, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

Ernest Stahl, the plaintiff below, commenced this action in 1878, alleging his ownership in fee of the Lone Tree lode, and complaining. that the defendants had ousted him therefrom, and still unlawfully withhold the possession thereof. The case has been several times tried in the district court, and this is the second time it has been before this court on appeal. The plaintiff's patent from the United States to the Lone Tree lode shows the date of entry at the land office to have been April 30, 1873. Defendants' patent to the Argentine shows the date of entry to have been July 3, 1875. Defendants claim to have made the discovery and location of the Argentine in 1865, prior to the discovery and location of the Lone Tree, and to have complied with all the laws, state and federal, and all the local rules and regulations respecting such locations; and that the vein of the Argentine is the premises from which plaintiff claims to have been ousted. This claim was denied by plaintiff. The territory described in the two patents cross each other; but whether or not there is an actual crossing of the two veins within the limits where the two patents so cross each other was the principal question of fact in controversy on the trial. Defendants did not adverse plaintiff's application for a patent.

This action involves the construction of certain sections of the act of congress of May 10, 1872, relating to mineral lands of the United States, and particularly sections 3, 6, 7, 14 and 16, which are here referred to by number as they appear in the United States Revised Statutes, to wit:

Section 2322, which provides, in substance, that locators of mining locations heretofore made, or which shall hereafter be made, on any mineral vein, lode or ledge situated on the public domain, their heirs and assigns, where no adverse claim exists on May 10, 1872, so long

as they comply with the laws of the United States and with local regulations governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines, extended downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. Also sections 2325 and 2326, which prescribe the manner in which patents may be obtained for lands containing valuable deposits, and for settling conflicting or adverse claims to any such locations. Also section 2336, which provides that, "where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection; but the subsequent location shall have the right of way through the space of intersection for the purposes of the convenient working of the mine. And where two or more veins unite, the oldest or prior location shall take the vein below the point of union, including all the space of intersection."

Also section 2344, which provides that "nothing contained in this chapter shall be construed to impair in any way rights or interests in mining property acquired under existing laws."

As we understand the views of counsel, it is contended on behalf of plaintiff that defendants, though they may have the prior location, yet, not having adversed plaintiff's application for a patent, they have forfeited all their rights within the surface lines of plaintiff's location; while in behalf of defendants it is claimed that their discovery and location, being prior to that of plaintiff, and prior to the passage of the act of May 10, 1872, all their rights and interests are saved by section 16 of said act.

Sec. 2344, *supra*. This latter view seems to be sup-
ported by the opinion of the supreme court of California
in the case of *Mining Co. v. Spring*, 59 Cal. 304. But
this court, in *Branagan v. Dulaney*, 8 Colo. 408, as well
as on the former appeal in this case (*Lee v. Stahl*, 9
Colo. 208), has announced a doctrine somewhat different
from either of the foregoing views. The former opinion
in this case should now be regarded as "the law of the
case," at least in this court, so far as it is applicable to
the matters assigned for error on this appeal. We would
not feel warranted in departing from it in determining
the rights of the parties to this action. When the law
governing a case has been once declared by the opinion
of an appellate court on a direct appeal or writ of error,
such opinion, on the retrial of the same case, upon the
same state of facts, is higher authority than the rule of
*stare decisis;* it is generally regarded as *res judicata*, so
far as the particular action is concerned. *Davidson v.
Dallas*, 15 Cal. 75; *Tunnel Co. v. Stranahan*, 21 Cal. 548.
See opinion of Mr. Justice BELFORD in *Mining Co. v.
Bank*, 2 Colo. 266.

According to such former opinion, as well as the opin-
ion in the case of *Branagan v. Dulaney*, *supra*, defend-
ants, having secured a patent for the Argentine location,
if they can prove that the vein thereof actually inter-
sects or crosses the Lone Tree vein, are entitled to follow
the vein of the Argentine, and extract the ore therefrom
within the side lines of their own location, and within the
patented limits of the Lone Tree location, except within
the space of actual intersection of the two veins, includ-
ing a right of way through the Lone Tree vein, notwith-
standing they did not adverse the plaintiff's application
for a patent to the Lone Tree lode; but they cannot
maintain the right to the mineral within the space of
lode intersection, nor other rights which they may have
had by virtue of a prior location, because they did not
assert and secure the same by adversary proceedings, as

provided by the act of congress; a failure so to assert such rights being deemed a waiver of them. Hence, if defendants have a true cross-vein, plaintiff cannot maintain ejectment therefor, or otherwise restrain them from working the same, so long as they confine themselves thereto, and keep within the side lines of their own location, and do not attempt to take the ore from the space of lode intersection with the Lone Tree; for to this extent defendants' cross-vein is excepted out of the grant, and is not lost by a failure to adverse plaintiff's application for a patent. But it is not the doctrine of this court that section 2344, *ex proprio vigore*, operates to reserve out of the grant other rights acquired prior to the passage of the act of 1872, but that it secures the protection of such rights at the time of the issuance of the patent to those who avail themselves of the adverse procedure prescribed by the act itself.

It is also claimed in behalf of defendants that they are entitled to the same rights, without adversing, in case the veins unite, as in case of their actual crossing; and that section 2336, *supra*, should be so construed. The argument is that the words " below the point of union," in said section, apply to veins uniting on the " strike," or on a horizontal extension, as well as to veins which unite on the " dip," or in their downward course; and that the word " below " should be construed as equivalent to " beyond." But this is not the ordinary signification of the word. Both words are of common use. Their meaning is plain, simple and well understood. It was well known at the date of the passage of the act that veins unite on their horizontal extension as well as in their downward course. Hence we would not be justified in assuming that congress committed the palpable mistake of using the word " below," instead of the word " beyond," if they really intended to give the preference to the prior locator in case of veins uniting on the " strike," as well as on the " dip," after the point of

union is reached, without regard to adverse proceedings. The reason for the distinction is obvious. In controversies respecting the union of veins on their horizontal extension there will be conflict in their surface limits, but veins may unite in their downward course without any surface conflict. Hence, the union of veins of the former class being usually on or near the surface, the conflict will ordinarily be apparent at the time of the application for the patent; and it was evidently the design of the act of 1872 to have all conflicts, so far as practicable, settled by the issuance of the patent, through the adverse proceedings therein provided for. But in case of the union of veins in their downward course, such conflict might not be foreseen or anticipated at the time of the application for the patent. Hence the provision in the latter case, that when the point of union is reached the oldest or prior location should take the vein below such point, including all the space of intersection.

There was no evidence or attempt to show that the Argentine and Lone Tree veins unite with each other in their downward course. The burden of proving that the two veins actually cross each other devolved upon the defendants; for, having failed to adverse plaintiff's application for a patent, in no other way could they show that they had prior rights within the limits of the Lone Tree patent which were excepted out of the grant; hence there was no error in the charge of the trial court in this regard. Neither was it technically erroneous to instruct the jury that their verdict should also be for the plaintiff in case they should find on all other points for the plaintiff, even if they should find that there was a crossing of the veins; for, if they should find on all other points for the plaintiff, that would include a finding that defendants had ousted plaintiff from his own patented limits at some place other than where the Argentine vein actually crosses the same, or at the space of intersection, for purposes other than a mere right of way.

Error is assigned upon the following instruction given on the trial: "If the jury believe from the evidence that the Argentine lode runs westerly from its discovery into the Lone Tree lode, and verges into it and does not cross it, but that the two lodes become one and the same lode, that in such case the oldest patent entry — that is, the Lone Tree — is entitled to the vein and ground as far as the apex of the vein is within its patent; and this is the case whether east of such point there are two lodes or only one lode." Upon the theory that only cross-veins and veins which unite in their downward course are excepted out of the grant in case of a failure to adverse, this instruction is not erroneous.

The trial court also charged the jury to the effect that the priority of discovery between the Argentine and the Lone Tree lodes had nothing whatever to do with their decision. This instruction was not error when we consider that defendants' rights, if they have any, must be saved on the ground that they have a cross-vein which is excepted out of plaintiff's grant, and not on the ground of a prior location.

The jury were instructed, in substance, that the crossing of lodes does not mean the crossing of two patents, but the actual crossing of the two veins themselves; and further, that if they should find from the evidence that there is such an actual crossing, then the defendants are entitled to their own vein within the conflicting area of the two patents through the space of intersection; but that such a crossing would not entitle them to leave their own patent and follow the Lone Tree lode. They were also further instructed that, if they should find there was such a crossing, to render a special verdict to that effect, specifying the point of crossing. These instructions were in substantial conformity to the views of this court in the two opinions above cited. As the jury did not return such special verdict, specifying the point of crossing, we must assume that in their judgment the evidence did not

warrant such a finding. Had the jury found that there was an actual crossing, and rendered a verdict accordingly, the judgment of the court would doubtless have been such as to protect the defendants in working their cross-vein in accordance with the law as heretofore laid down by this court. As the verdict was general for the plaintiff, we see no error in the judgment, and it is accordingly affirmed.

*Affirmed.*