JOHNSON v. BAILEY AND ALLEN.

1. ABSTRACTS UNDER APPEALS ACT OF 1885.—Under the act of 1885 the appellee was at liberty to supply any defects in the abstract, as furnished by appellant, and the court might order any further necessary transcript of the proceedings.

2. LAW OF THE CASE ON RETRIAL.—It is only where *the same state of facts appears on the retrial* that the law, as declared by the supreme court on a former review, is to be regarded as the law of the case. Where a case has been remanded generally, as for a trial *de novo*, the parties have the right to introduce new evidence and establish a new state of facts.

3. ERROR OF LAW IN TRIAL BY THE COURT.—Where the court in a trial without a jury is controlled in its findings of fact by an erroneous view of the law, the error is the same in substance as where the verdict of a jury is controlled by an erroneous instruction.

4. SALE UPON CONDITION—ATTACHMENT BEFORE DELIVERY OF POSSESSION.—Where personal property is contracted to be sold upon condition that it shall be delivered at a particular place, it is subject to attachment at the suit of the creditors of the vendor until it is delivered in accordance with the condition of the contract.

5. DEFECTIVE PLEADING AIDED BY PROOF.—An answer defective as a justification under legal process may be aided by the proof.

6. MEASURE OF DAMAGES IN REPLEVIN.—The general rule of damages in actions of replevin, where the plaintiff recovers judgment for the value at the time of the taking, is legal interest on such valuation during the time of the detention; and this rule is applicable to working animals where the plaintiff has received them in *pledge* under an express contract to sell the same and account for the proceeds.

*Appeal from Superior Court of the City of Denver.*

THIS was an action for the specific recovery of personal property consisting of certain horses, mules, sets of harness, and log wagons. Bailey and Allen were plaintiffs below. They claimed to be the owners and entitled to the exclusive possession of the property by purchase or assignment from one Alexander Kemp. They charged that the defendant Johnson, as sheriff of Jefferson county, had wrongfully taken the property from their possession by virtue of a writ

of attachment in favor of Dodge and Fuller against said Kemp. The real controversy was, therefore, between plaintiffs as assignees of Kemp, and Dodge and Fuller as attachment creditors of. Kemp; and the principal question for determination was whether there had been such a delivery of the property to plaintiffs as would enable them to maintain their claim of title against the seizure by the sheriff.

At the close of the trial the court announced its conclusions of law and findings of fact as follows :—

" That if this was a first hearing of the cause, on the evidence submitted, his finding and judgment would unquestionably be for the defendant, on the ground that the evidence did not show such immediate delivery or continuous change of possession of the property in controversy as to vest the title thereto in the plaintiffs at the time of the alleged transfer to them from Alexander Kemp; but that it was the duty of this court to follow the law of this case as laid down by the supreme court in its decision on the proceeding in error, reviewing the former judgment herein.

" That the supreme court had, in its opinion, said :

" ' Had the sheriff arrived in camp that day (meaning the day of the alleged sale) and executed his writ of attachment while the animals and other property remained on the grounds and in the stables and corrals of Mr. Kemp, the case would have presented a very different feature. But no levy of the writ was made until some time next morning, when the stock was *en route* to Denver, a distance of five miles from camp. Both the title and possession were then in the plaintiffs.'

" That on this trial the new evidence had not changed the facts as shown on the former trial as to the circumstances attending the time of the levy, and that therefore the opinion of the supreme court was the law of this case, and that under that decision the finding must be for the plaintiffs.

" That the value of the property taken was $1,557.57. That the damages for the detention, measuring the same by the *per diem* value of the use of the property from the time

of the taking to the time of trial, after allowing for the expenses of keeping the same in repair, was $13,316.65½, making a total of $14,874.22½."

Thereupon the court rendered judgment accordingly. The defendant Johnson brings this appeal.

Messrs. WOLCOTT & VAILE, for appellant.

Mr. L. C. ROCKWELL, for appellees.

Mr. JUSTICE ELLIOTT delivered the opinion of the court.

This appeal is prosecuted under the act of April 23, 1885. There is, therefore, no force whatever in the contention of counsel for appellees that the appeal must be dismissed because a complete transcript of the record has not been filed. If counsel had examined the appeals act of 1885 and the numerous decisions of this court in pursuance thereof, he would have discovered that he was at liberty to supply any defects in the abstract as furnished by appellant; also, that the court has the power to order such further transcript of the proceedings as may be necessary. Thus counsel might have been spared the preparation and we the consideration of much unnecessary matter in his brief. See Session Laws 1885, p. 350, secs. 16 to 19; also, *South Boulder Ditch Co. v. Community Ditch Co.*, 8 Colo. 439; *Wilson v. Hawthorne*, 14 Colo. 530, and many other decisions.

This is the second time this cause has been before this court for review. See opinion in *Bailey v. Johnson*, 9 Colo. 365, where a general summary of the matters in controversy between the parties may be found. It appears that the former trial of this case was by jury, and that the trial judge directed a verdict in favor of defendant. The action of the court in thus directing a verdict was declared to be error, and for this reason the judgment was reversed and remanded.

It is now contended that certain language used by the court in its former opinion of reversal concerning the title

and possession of the property at the time . of the levy, is
*res judicata* of the facts of the case, · and ·therefore that
plaintiffs' claim of title must be sustained .in any event as a
matter of law.    But the rule in regard to " the law of the
case " does not extend that far.    It is only where *the same
state of facts appears on the retrial* that the law as declared
by the appellate court on a former review is to be regarded
as controlling.    *Lee v. Stahl,* 13 Colo. 177.    In this connec-
tion, the following from the supreme ·court of Indiana in
*Dodge v. Gaylord,* 53 Ind. 369, is peculiarly appropriate :—

" It is also settled, that the decision .of the supreme court
rendered upon a given state of facts, becomes the law of the
case as applicable to such facts, and if the cause be remand-
ed for a new trial, the parties have the right to introduce new
evidence and establish a new, state of facts ;· and when this
is done, the decision of the supreme court ceases to be the
law of the case, and the court in the trial of such case is not
conclusively bound by such decision, but should apply the
law applicable to the new and changed state of facts."

It is true, the opinion of the court in 9 .Colo. *supra*, re-
views to some extent the facts of the case as then disclosed,
and states upon the evidence then before the court that at
the time of the levy, the title and possession · of the prop-
erty were in plaintiffs.    It is evident, however, that the opin-
ion was not intended to be *res judicata* as to such matter in
any future trial, else the case would not have been remand-
ed generally, as for a trial *de novo*, but would have been re-
manded with directions to try the cause·for the *sole* purpose
of ascertaining the value of the property and the damages
for its detention, and, thereupon, to .render judgment in
favor of plaintiffs.    But such course was not directed by
the judgment of reversal ; nor was it the course actually
pursued.

Upon the remanding of the cause, a new trial—the trial
we are now called upon to review—was entered upon and
conducted in all respects as a trial *de novo* of the original
issues in the case.    The evidence was introduced· for the

most part by the examination of the living witnesses in open court. The trial was to the court without a jury. Hence, the trial judge should have felt himself at liberty to render a finding upon the facts as established by the evidence then introduced before him. The evidence taken at the former trial was not submitted by either party; hence he was not called upon to consider it; nor does it appear that he did consider the former evidence; the statement in his finding, "That on this trial the new evidence had not changed the *facts* as shown on the former trial as to the circumstances attending the time of the levy," does not indicate that he considered the former *evidence*, but that he felt himself bound by the former opinion as establishing the title and possession of the property in the plaintiffs by reason of *the time and place of the levy.* This is clearly indicated when the whole finding is considered together.

It is apparent that the court below misconceived the effect of the former decision reversing the case. The former judgment was reversed on the express ground, as shown by the opinion, that "the court erred in withdrawing the case from the consideration of the jury upon the facts and the law, and in directing a verdict for the defendant." The legal effect of thus reversing and remanding the cause was that a retrial might be had for the determination of all the matters in issue between the parties upon such evidence as might be produced *de novo*, and not that certain matters should be considered irreversibly established by the former evidence, as counsel for appellees now contend.

It is further claimed in behalf of appellees that the finding and judgment cannot be disturbed even if the last trial is to be regarded in all respects as a trial *de novo*, since the court sitting as a jury actually found in favor of the plaintiffs upon the issues joined. This claim would be entitled to much consideration if the court had found in favor of the plaintiffs upon a proper view of the law; and as the judge was acting in the double capacity of court and jury, we would be bound to believe he was governed by proper views

of the law in arriving at his conclusions of fact were it not that the contrary so plainly appears. *Rollins v. Commissioners*, 15 Colo. 104.

In announcing his findings the trial judge frankly explained that he did not feel at liberty to follow his own judgment upon the evidence then before him in determining the case. He said: " That if this were a first hearing of the cause, on the evidence submitted, his finding and judgment would unquestionably be for the defendant, on the ground that the evidence did not show such immediate delivery or continuous change of possession of the property in controversy as to vest the title thereto in the plaintiffs at the time of the alleged transfer to them from Alexander Kemp; but that it was the duty of this court to follow the law of this case as laid down by the supreme court in its decision on the proceeding in error, reviewing the former judgment herein." The judge then quoted from the opinion in 9 Colo. *supra*, and concluded by saying: " that under the decision the finding must be for the plaintiffs." Thus the judge was loyal to the opinion of the higher court as he understood it; and it is evident he was as much controlled thereby in his finding of fact as a jury would have been under an absolute instruction to find in favor of plaintiffs.

. The claim that the evidence on the trial now under review, shows without substantial conflict that there had been an immediate delivery of the property and an actual and continued change of possession thereof sufficient to satisfy the requirements of the statute of frauds, cannot be maintained. Gen. Stats., sec. 1523. It is true, the plaintiff Allen testified positively that there was an immediate change of possession in the mountain camp, at the very time of making the agreement with Kemp. But when cross-examined he admitted that he left the property right there; and when asked what fact evidenced the change of possession, he answered: " The surrender to me, the bill of sale and the complete surrender in the presence of the men and the acknowledgment that he had no further interest in those 17 head of stock." This

evidence at best tends to show a mere constructive, not an actual delivery, followed by an open, notorious and exclusive possession by the vendee. *Bassinger v. Spangler*, 9 Colo. 175. It is true, also, that Allen testified further that he appointed Adgate, Kemp's book-keeper, to be plaintiffs' agent to hold possession of the property. Many circumstances, however, appeared in evidence tending to show that Adgate did not thereafter retain the sole and exclusive possession of the property as the agent of plaintiffs, but that in the matter of the possession of the property he thereafter acted in the interest of Kemp as well as of the drivers who were to take the property to Denver.

But it is urged that the starting of the property to Denver was an actual delivery. Let us see. The evidence tends to show that the plaintiff Allen, acting for himself and his co-plaintiff Bailey, entered into an agreement with Kemp whereby plaintiffs were to take the property, first, in payment of their own debt against Kemp, amounting to about $241; second, that plaintiffs were to pay the wages due to the drivers of the teams, which were variously estimated from $700 to $1,000; that the property was to be taken to Denver and sold by plaintiffs, the proceeds to be applied in reimbursing plaintiffs for the amount of their own debt and the wages paid by them to the drivers; and that the balance, if any, should be paid to the other employees of Kemp, the foreman and book-keeper, who held claims against him amounting to about $700. In the light of this evidence, the alleged transaction was not an absolute sale, but an assignment or pledge of the property charged with certain specified trusts.

Against the testimony of Allen that the property was delivered to him in the mountain camp complete and absolute at the very time of making the agreement, and that he was in the actual possession thereof while the same was on its way to Denver, there is testimony tending to show that the property was permitted to remain in the mountain camp in the same situation as before the making of the agreement; that some shoeing of the animals and repairs of the property

were to be done, and that some work was also to be finished up by the teams before the property should be started for Denver, that the teams were to be. thus.kept, fed and worked by Kemp and his. men, and finally delivered without any cost to plaintiffs at their corral in Denver. There is, also, testimony tending to show that some of the drivers who had the manual control of the property claimed also to have the actual possession of it, or some portion of it, under certain claims or liens against. it for wages due them from Kemp, and that they only consented to the agreement entered into between Allen and Kemp on. condition that they should accompany the property to Denver, and receive their pay before delivering the property to plaintiffs.

That the property was actually taken by the sheriff from the drivers while *en route* to Denver, is undisputed. The plaintiff Allen on cross-examination also testified that Kemp was to keep the stock there over night until morning and do that little work; that the drivers were to be paid upon the delivery of the stock at Denver; that such was the condition of the sale; that he would not have paid them before delivery. Being cross-examined concerning his testimony on the first trial of this case at Golden,—not the trial formerly reviewed by this court,—Allen admitted that on said first trial he might have testified that plaintiffs were not liable to the drivers until they got the animals, and that the drivers were to deliver them in Denver. This testimony was given when the facts should have been fresh in the memory of the witness.

Again, John Hentle, one of the teamsters to whom Kemp was indebted, testified in substance that at the time the property was seized by the sheriff, he, Hentle, had charge of a portion of it and had been in possession of the same, holding it under a bill of sale from Kemp to secure his wages, for several days before Kemp made the agreement to transfer the property to plaintiffs. His testimony, also, tends to show that by an agreement with Kemp he voluntarily subordinated his claim to the agreement between Kemp and plaintiffs up-

on the express condition that he should accompany the property to Denver and remain in possession of the same until his wages should be paid, and that it was under such circumstances that he was proceeding to deliver the property when it was seized by the sheriff.

There was other testimony *pro* and *con* bearing upon the question of the delivery of the property; but the foregoing is sufficient to show that the evidence was not altogether in favor of plaintiffs. It is apparent, therefore, that the erroneous view of the law by which the trial court was led to find in favor of plaintiffs may not have been a harmless error.

The point that the answer is defective as a justification of the taking and detention under legal process because it does not allege the existence of a valid debt in favor of the attachment creditors, according to the doctrine announced in the case of *Deitsch v. Wiggins*, 1 Colo. 299, and reaffirmed in *Wyatt v. Freeman*, 4 Colo. 14, does not appear to have been made in the court below; besides, the defendant proved his debt upon which the attachment was based without objection, as appears by the abstract of the record before us. The defective pleading was therefore aided by the proof. Bliss on Code Pleadings, sec. 435 *et seq.; Williams v. Mellor*, 12 Colo. 1–11.

We might close this opinion here by a reversal of the judgment for the error already pointed out; but as another trial of the cause may be necessary, we deem it expedient to notice the assignments of error relating to the damages awarded and included in the judgment under consideration.

It must be admitted that an award of *more than thirteen thousand dollars* as damages for the detention of common perishable property valued at *less than sixteen hundred dollars* strikes the mind at once as manifestly unjust, and indicates that the court must have adopted an erroneous rule for measuring the damages. The general rule of damages in actions of this kind when the plaintiff recovers judgment for the value at the time of the taking, is legal interest on such valuation from the date of the taking to the date of trial. The

finding of the court in this case shows that the damages were computed upon the basis of "the *per diem* value of the use of the property from the time of the taking to the time. of trial, after allowing for the expense of keeping 'the same in repair." This rule has doubtless been resorted to in some cases as a measure of damages for the detention of working animals in favor of the general owner where it has been made to appear that such owner intended to use the animals, and that by the detention he has been actually deprived of such use. Such rule may also sometimes be the proper one in favor of a party having the right to the use as well as the possession of the property, even though not the general owner. Wells on Replevin, sec. 537, 579, 580, 581 ; Sutherland on Damages, 544, 545 ; *McArthur v. Howitt*, 72 Ills. 356; *Allen v. Fox*, 31 N. Y. 562: distinguished in *Redmond v. Am. Mfg. Co.*, 121 N. Y. 415.

It is scarcely necessary to say that in the case before us there are very few, if any, of the conditions upon which to apply the rule of usable value as the proper measure of damages. The original owner of the animals had ceased to work them and no longer intended to use them for work. The plaintiffs' title according to their own showing was not one, of absolute ownership, nor did they have any right under their agreement for possession to use the teams or wagons for work. On the contrary, they took the property in *pledge* under an express contract to sell the same and account for the proceeds. Instead of being a source of profit to plaintiffs, the property, had the same been delivered at their corral in Denver, would have involved them in the trouble and expense of keeping and feeding until the same could have been subjected to sale. In short, the property in the hands of the plaintiffs under the terms of their agreement with Kemp was to be nothing more than common merchandise, The plaintiffs at the time of the seizure by the sheriff had not paid a dollar out of pocket on account of the property. At most, they had canceled their own claim against Kemp amounting to $241, and had agreed to pay from $700 to

$1,000 to the drivers, and this was all the payment they could have been required to make according to the terms of their agreement until the property should be sold.  Moreover, the evidence does not show that they have ever paid, or sought to pay, or that they were ever asked to pay anything on account of their alleged purchase after the property was seized by the sheriff.  These circumstances also tend to show that the sale was made upon condition of delivery in Denver, and that none of the parties ever really regarded the property as delivered.

Under these circumstances, it is clear that legal interest on the amount the property could have been sold for in Denver from the date of seizure to the date of trial was the full measure of damages which the plaintiffs were entitled to recover in case of a determination of the cause in their favor.

Neither the case of *Machette v. Wanless*, 2 Colo. 169, nor the case of *Hanauer v. Bartels*, 2 Colo. 525, cited by counsel for appellees, is in point.  Neither of those cases was for the recovery of working animals or live stock of any kind; nor was the usable value of the property in controversy adopted in either case as the measure of damages.  *There was nothing decided* in either of those cases which in any way conflicts with this opinion.  It is true, the opinions in those cases contain remarks to the effect that usable value is, under some circumstances, the measure of damages for the detention of domestic animals.  But that was not the matter in issue, nor was it a point decided in either case.  It is not every remark in a judicial opinion that amounts to a judicial decision.

It is exceedingly unfortunate that this cause should require so many trials; but law and justice alike forbid that the present judgment should be permitted to stand.  It is accordingly reversed and the cause remanded.

                                                  *Reversed.*