ISRAEL, PLAINTIFF IN ERROR, v. ARTHUR, ADMINISTRA-
TOR, DEFENDANT IN ERROR.

1. PROOF OF MARRIAGE.

In the county court petitioner asked to be recognized as the widow of one A, deceased. The evidence showed that she had repeatedly declared that she was married to a second husband before the death of A, her first husband; petitioner and her second husband admitted on the trial that they had lived and cohabited with each other and held themselves out to the public as husband and wife in the communities where they had so lived, prior to the death of the first husband: *Held*, that the proof was sufficient to warrant the trial court in finding that the plaintiff in error had actually contracted and consummated the marriage between herself and the second husband before the death of the first, and so was debarred from claiming as the widow of her first husband. The case of *Arthur v. Israel*, 15 Colo. 147, followed as the law of this case.

*Error to the County Court of Larimer County.*

PETITION by Abbie A. Israel to the county court to be recognized as the widow and heir of John Arthur, deceased, and to be adjudged sole distributee of his estate, he having died without children. Petition denied. Petitioner brings the record of the proceedings to this court by writ of error.

A sufficient statement of the facts of this litigation will

be found in *Israel v. Arthur,* 7 Colo. 5, and *Arthur v. Israel,* 15 Colo. 147.

Mr. W. S. DECKER and Mr. T. J. O'DONNELL, for plaintiff in error.

Mr. E. A. BALLARD, Messrs. ROBINSON & LOVE and Mr. V. D. MARKHAM, for defendant in error.

PER CURIAM. This cause in different phases has been several times before this court. In *Israel v. Arthur,* 7 Colo. 5, the decrees of the county court whereby John Arthur undertook to obtain a divorce from his wife Abbie were held to be void for want of jurisdiction. The matter then considered by the court was limited to the question of the validity of said decrees as they appeared of record; and upon the face of the record, without more, the decrees were held insufficient to debar Mrs. Israel from asserting her claim as widow and heir to John Arthur, deceased.

The next time the controversy came before this court, (*Arthur v. Israel,* 15 Colo. 147,) the question presented arose upon the demurrer by Mrs. Israel to the amended answer of the administrator, James B. Arthur, resisting her petition to be recognized as the widow and heir of John Arthur. The amended answer set up a new state of facts in connection with said decrees of divorce. The new facts showed Mrs. Israel in a new light, and, in the opinion of the court, gave her a different legal *status* in relation to the controversy. Upon mature consideration the amended answer was held to be sufficient in law to debar or estop her from claiming any property rights as the widow of the said John Arthur, deceased. The court did not change its views of the law as to the facts appearing of record in 7 Colo. *supra*; but simply declared the law applicable to the new state of facts introduced into the record by the amended answer, as admitted by the demurrer. *Johnson v. Bailey,* 17 Colo. 59 ; *Dode v. Gaylord,* 53 Ind. 369.

Upon the remanding of the cause to the county court, Mrs. Israel filed a replication to the amended answer, and upon the issues thus formed a trial was had, resulting in a finding and judgment adverse to her petition. She now brings the record to this court, and assigns error, to the effect that the finding and judgment of the county court are against the evidence, and contrary to the law.

Upon the record now presented, according to the plainest principles governing appellate procedure, the only question for us to determine is whether the evidence upon the last trial was competent to prove the allegations of the amended answer. The court having by its opinion in 15 Colo., *supra*, held the amended answer sufficient in law; and the cause having been again tried by the county court in accordance with that opinion, this court, as well as the county court, must regard that opinion as " the law of the case," so far as the matters and things alleged in said amended answer were established by competent evidence to be the true facts of the case. *Lee v. Stahl,* 13 Colo. 174 ; *Routt v. Greenwood Cemetery Co., ante,* p. 132.

From the record the following facts appear to be undisputed. The dates are material to the understanding of other portions of the evidence.

In 1859 plaintiff in error was married to John Arthur. For some years and up to 1873 she lived with Arthur at or near Fort Collins, Colorado. James H. Israel was in the employ of Arthur for about three years prior to 1873, when he went to Iowa.

In the latter part of 1873 plaintiff in error left her husband and joined Israel, and thereafter lived and cohabited with him in Iowa, Missouri and Kansas and in southern Colorado, several hundred miles from Fort Collins.

On February 9, 1875, a decree of divorce was entered by the probate court of Larimer county in favor of said Arthur against the present plaintiff in error ; and on June 12, 1877, a second decree of divorce of like import was also entered in the same court. John Arthur died, April 16, 1878.

Other evidence was produced as follows:

*Mrs. Elizabeth Sweeney* of Fort Collins, wife of the former sheriff, testified that in 1881 Mrs. Israel told witness that she had been married to Israel three times; that the first was a sham marriage, that the second time was after she heard that Arthur had got a divorce from her, and that the third time was after Arthur died. Witness testified that these statements were made at her house in Fort Collins in 1881, during the occasion of the first trial of this cause, but that witness did not communicate them to counsel for the administrator for some years afterwards.

*Mrs. Duncan*, mother of Mrs. Sweeney, testified that during the occasion of said first trial Mrs. Israel told witness that she had been married twice to Mr. Israel. Witness did not remember having communicated this statement of Mrs. Israel to anyone but her daughter Mrs. Sweeney.

*Mrs. Elizabeth Rogers* of Weld county, an aged lady, testified that she had been acquainted with John Arthur and his wife Abbie for many years;—that she saw Mrs. Israel at Fort Collins in 1881, when she came to attend the trial; that Mrs. Israel stayed at the house of witness for several weeks during that time; that Mrs. Israel told witness that she had been married twice to Mr. Israel; that the marriage was after the divorce took place. Witness understood that Mrs. Israel, instead of her first husband, was the applicant for the divorce. Witness further testified that Mrs. Israel said on that occasion that "she thought she had forfeited her right or claim to the estate of John Arthur, and would never have undertaken it (the suit) if other parties had not come and undertaken to carry it through."

The testimony of *Mr. and Mrs. James H. Israel* was taken by depositions. They concurred in testifying that they never were married to each other until after the death of John Arthur. The following is from the testimony of Mrs. Israel, as set forth in her own printed abstract of the record:

" I was informed by John Arthur in January, 1876, of divorce proceedings to dissolve the marriage relation between

him and me. He merely told me that the divorce that he had was not legal and that I was still his wife as much as ever I was. I never heard of any other divorce proceeding prior to his death. * * *

"In 1873 I ceased to live in Larimer county. Since then I have lived in Adair county, Iowa, about one and a half years. I lived in Canon City about a year before going to Adair county. The conversation I had with John Arthur was at Canon City. After leaving Larimer county, besides the places I have mentioned, I lived in Fort Scott, Kan., about three months, and traveled across the plains to Del Norte, Colo., and lived there until I went to Canon City. During all these years I lived with James H. Israel as his wife, and was not known to people with whom I formed acquaintance other than his wife. During that time Mr. Israel and I held ourselves out as husband and wife. This suit was not brought in the name of Abbie A. Israel. There never was any other marriage ceremony performed between Mr. Israel and myself than that on June 18, 1881. * * * The reason why this marriage between Mr. Israel and me was deferred until June was because I did not think we could be legally married before, not having heard of the second divorce. * * * I know Mrs. Elizabeth Rogers; I met her in Fort Collins in 1881. I did not say to her that I had been married to Israel during the lifetime of Arthur. I have a present interest in this suit. I don't remember that I said to Mrs. Rogers then that I would not have brought the suit if other parties had not come forward and agreed to carry it through. * * * During all the time I lived with Mr. Israel, as I have stated, I performed and discharged all the usual and ordinary duties of a wife to him, and cohabited with him as such."

The following is the testimony of *Mr. Israel,* as shown by said printed abstract:

"I became acquainted with petitioner in Larimer county, in 1869. I worked for John Arthur about three years before she left his home. I was working for him when she abandoned his home. I never had illicit intercourse with

her before she left him. The first illicit intercourse was in December, 1873. We lived together from 1873 to June, 1881, pretty much the same as we have since. I slept and cohabited with her part of the time. After she returned from Iowa we did not cohabit until we reached Ouray county. She was in Iowa one year or more. She came to Ouray county as Abbie A. Arthur. We had lived in Ouray a very short time when she was called Mrs. Israel. I met her in Wintersett, Iowa, in 1873, when the relations of husband and wife began. I consulted with Mrs. Israel first about her leaving her husband and living with me only by letter. The correspondence was from the latter part of September, 1873. The matter was not talked or considered between us until after she went to Iowa in August, 1873. Mrs. Arthur began the correspondence. We remained in Wintersett City one night; was four or five days in Kansas City. I arrived in Ouray county, June 4, 1877."

From the testimony of Mr. and Mrs. Israel it appears that their cohabitation was broken off for about a year and a half prior to June, 1877. It was fair for the trial court to infer that this was because Mrs. Arthur was informed in January, 1876, by her husband, John Arthur, that the first divorce was not legal. Israel's testimony upon this point was: "After she (petitioner) returned from Iowa we did not cohabit until we reached Ouray county. She was in Iowa one year or more. She came to Ouray county as Abbie A. Arthur. We had lived in Ouray a very short time when she was called Mrs. Israel. I arrived in Ouray county, June 4, 1877." This testimony is most significant, when it is remembered that the second decree of divorce was entered on June 12, 1877.

In view of all the circumstances of the case, the conduct of the parties, and bearing in mind the repeated declarations of plaintiff in error that she had been married to Mr. Israel more than once, the inference is almost irresistible that they assumed the relation of husband and wife at Ouray in June, 1877, in consequence of learning of the second decree of

divorce.  It is not strange that the trial court did not con-
sider their denial sufficient to rebut such inference.  Though
there was no express proof of a formal ceremony of marriage,
*in facie ecclesiœ*, or by a civil magistrate, yet from all the
evidence and circumstances of the case the court was war-
ranted in finding that plaintiff in error had actually con-
tracted and consummated a marriage with Israel before the
death of her first husband, and so the substance of the issue
formed upon the amended complaint was proved.

By the brief and argument of counsel for plaintiff in error
we are now asked to reconsider the decision announced in
15 Colo., *supra*.  It is urged that the decision is contrary to
sound legal principles, and in violation of rights guaranteed
by the Constitution of the United States.  These views were
fully presented when that decision was announced, but upon
due consideration were not approved.  As before stated, we
regard the former opinion as controlling in this particular
litigation ; hence, we shall not enter upon a further discus-
sion of the questions therein considered.

The judgment of the county court is affirmed.

*Affirmed.*