Hurlbut, J.
Suit by appellee (plaintiff below) against appellant (defendant below) to cancel a tax deed.
Complaint is in usual form and was filed May 12, 1902. The complaint alleges many reasons why the tax deed is void, only two of which it is necessary to mention; viz, (a) That the tax deed is void on its face, (b) That no sufficient publisher’s affidavit was executed and deposited with the county clerk and recorder as required by sec. 3884 and sec. 3885, Mills ’ Annotated Statutes.
This case was tried once before in the district court of La Plata county in 1903. Prom a judgment rendered in favor of plaintiff an appeal was taken to the supreme court, and the judgment was reversed. *513 It is now in this court on appeal from a second judgment in favor of plaintiff.
The controversy seems to revolve around the two questions above mentioned, which we will take up in the order stated:
The former opinion in this case, viz., Herr v. Graden, 33 Colo., 527, was rendered in 1905. The court there held that the tax deed before it (being the same one now under consideration) was good on its face. Counsel for appellee contends that in a later case, Lines v. Digges, 43 Colo., 166, the supreme court reached a different conclusion in passing upon the validity of a tax deed substantially in the form of the one considered in the former case and involved here. Even if it be true that there is an apparent conflict in the two causes, the situation is controlled by the doctrine of the “Law of the Case,” which has been thoroughly considered and settled by our supreme court.
In Lee v. Stahl, 13 Colo., 174, the court, in refusing to reconsider certain questions decided on a former appeal of the case, used the following language: “When the law governing a case has been once declared by the opinion of an appellate court on a direct appeal or writ of error, such opinion, on a re-trial of the same case upon the same state of facts, is higher authority than the rule of stare decisis. It is generally regarded as res judicata so far as.the particular question is concerned.” This case is cited and approved in Routt v. Greenwood Cemetery Company, 18 Colo., 132, and Justice Goddard, speaking for the court, used the following language: “The right of the petitioner to avail itself of the law of 1891, and make full payment or tender of the balance of the purchase price, is not open for discussion on this ap *514 peal. On the former hearing that question was passed upon and settled, and is now the law of this case.” The following cases also follow the doctrine announced in Lee v. Stahl, supra: Boettcher v. Colo. National Bank, 15 Colo., 16. Israel v. Arthur, 18 Colo., 158. Wilson v. Bates, 21 Colo., 115. Buckhorn Plaster Co. v. Consolidated Plaster Co., 47 Colo. 517. Gutshall v. Cooper, 48 Colo., 160, Koll v. Bush, 6 Colo. C. A., 294. U. P. Ry. Co. v. Kelley, 4 Colo. C. A., 325. Miller v. Hall, 14 Colo., C. A., 367. Schmidt & Ziegler v. First National Bank of Denver, 10 Colo. C. A., 261. Great Plains Water Co. v. Lamar Canal Co. et al., 31 Colo., 96.
The cases of our appellate courts above cited are in line with the great weight of authority in this country.
The record shows that the tax deed which was considered by the supreme court on the former appeal is the same tax deed which was in evidence at the re-trial and which is now under consideration on this appeal. There can be no question but that the facts concerning the form of the deed were the same at the first and second trial of the case, as well as on the first and second appeal thereof. It, therefore, follows as a corollary that the doctrine announced in Lee v. Stahl, supra, controls here, and that the tax deed before us must be considered good on its face in conformity with the ruling in Herr v. Graden, supra.
In the following cited cases the doctrine of the “Law of the Case” was uniformly adhered to, and in most of them the same situation existed as exists in the case at bar, that is to say, the first appeal was decided by the supreme court and the second appeal by *515 a different appellate court; viz., Tipton County Commissioners v. Indiana P. C. R. Co., 89 Ind., 101. Phoenix Insurance Co. v. Pickel, 3 Ind. App., 332. Brown v. Marion National Bank, 18 Ky., 186. Thompson’s Appeal v. Albert, 15 Md., 268. Ogle v. Turpin, 8 Ill. App., 453.
The supreme court on the former aj:>peal of this case having held this same tax deed to be good on its face, the question is res judicata as to the parties to this suit, and cannot again be called in question or discussed and considered on this appeal.
The next question for consideration concerns the sufficiency of the publisher’s affidavit of notice of tax sale, and as to whether or not the same was executed and deposited with the cleric and recorder as required by law.
At the first trial such affidavit could not be found in the clerk’s office, and the trial court refused to permit defendant to introduce evidence showing, as a matter of fact, that such affidavit had been deposited with the clerk about the time of the advertisement of sale. This ruling of the court was held to be error by the supreme court, and the judgment was reversed. At the re-trial of the case defendant failed to show that such affidavit had been filed with the county clerk at or about the time of publication of the tax sale notice. He did show, however, by competent evidence, that on May 31, 1905, an affidavit of publication was deposited in the office of said clerk; that the same was executed by W. S. Dornblaser, the foreman in charge of the mechanical department of the paper publishing the notice. Does this affidavit satisfy the requirements of the statute? If answered in the affirmative, the judgment should be reversed; *516 otherwise affirmed. The fact that the affidavit was deposited with the clerk many years "after publication of the notice of sale, and after delivery of the tax deed to the purchaser, and the fact that it was made after the trial of the case had begun, would be no objection to its admission in evidence, provided it was otherwise sufficient as to contents and execution. In Bertha Gold M. & M. Co. v. Burr, 31 Colo., 264, the court held that the failure to file such affidavit would imt invalidate a tax sale, and that the fact that the same was not on file with the clerk at the time the tax deed was given was immaterial, if the affidavit be on file at the time it became necessary to prove the fact of publication of notice, and further held that a publisher’s affidavit filed after suit brought, and proven at the trial, was sufficient in law as to the time of filing the same. To the same effect is Sternberger v. Moffat, 44 Colo., 520, in which case the court held that the affidavit might be filed at any time during the trial of the action to cancel the tax deed, and permitted a second affidavit of like import to be filed in lieu of a former one deemed defective.
When the affidavit of Hornblaser was offered in evidence objection was made, and the court held it inadmissible on the ground that it was not' sufficient in form and was not executed by a person qualified under the law to make the same.
We think the affidavit was sufficient as to form. The legislature prescribed a form of affidavit which might be used by the printer. When the prescribed form was used (as was done in this case) it included all allegations which the legislature deemed necessary for the purpose.
A much more serious question presents itself in *517 considering the sufficiency of this affidavit, namely, was the affidavit executed by the person whom the' legislature required should make the same? The answer to this question necessitates a construction of sec. 3884, fills’ Annotated Statutes, which reads as follows:
“Sec. 3884 (Publisher’s Certificate — Affidavit— Form). Every printer who shall publish such list and notice shall, immediately after the last publication thereof, transmit to the treasurer of the proper county, an affidavit of such publication, made by such person to whom the fact of publication shall be known;.and no printer shall be paid for such publication who shall fail, to transmit such affidavit within fourteen days after the last publication. Such affidavit may be substantially in the following form, to-wit:
I, A...... B......, publisher (or printer) of the........................, a.......newspaper, printed and published in the. county of......•......, and state of Colorado, do hereby certify that the foregoing notice and list were published in said newspaper, once in each week, for..........successive weeks, the last of which publication was made prior to the............day of............, A. D......., and that copies of each number of said paper, in. which said notice and list were published, were delivered by carriers or transmitted by mail to each of the subscribers of said paper, according to the accustomed mode of business in this office.
A......B......,
Publisher (or printer) of the...........
State oe Colorado,
......County — ss.
*518 The above certificate of publication was subscribed and sworn to before me by the above-named A......B......, who is personally known to me to be the identical person described in the above certificate, on the............day of............, A. D. 18.....
C...... D......,
(Seal.) .......”
The undisputed evidence shows that at the time of the publication of the notice of tax sale in 1898 Mr. Dornblaser was in the employ of the owner or proprietor of the Durango Democrat, but in the capacity only of foreman in general charge of the mechanical department of the paper; that he had full supervision of the press-room, and of the employees, in so far as their duties applied to the mechanical department of the paper; that he looked after the insertion of advertisements and all other matters printed in the paper, proof-read the same and dictated the manner in which they should appear in the press forms; that he attended to the mailing of the paper to the subscribers; that he was never at any time in supervisory control or management of the paper or its policy, but- at all times was subject to the direction of the proprietors or owners of the paper, stating himself while on the stand as a witness that he had nothing to do with the management of the paper.
The term “printer” used in the sense expressed in the statute has been judicially defined by the appellate courts of many states, as well as by the federal courts, and it is generally held that the term “printer” used in such sense, does not mean “typesetter” in the printing office, but is synonymous with the words “proprietor” and “publisher,” which in *519 turn are held to indicate interest or rights of some character in connection with ownership or title to the plant.
In Pennoyer v. Neff, 95 U. S., 714, in passing upon an Oregon statute requiring proof of publication of summons to be made by the “printer or his foreman or his chief clerk,” it was held that the word “printer” as used in the statute did not mean the person who sets up the type, but was used as synonymous with “publisher.” It was also held that the statute was satisfied if the “editor” made the affidavit. To the same effect is Bunce v. Reed, 16 Barbour (N. Y.), 347. The court had under consideration the same kind of a statute as that of Oregon, and it was held that in the affidavit which mentioned the affiant as the “publisher” of the paper, the word was synonymous with the wo'rd.“printer” as used in the statute. Also in Sharp v. Daughney, 33 Calif., 505, the court, in construing a statute similar to that of Oregon, construed the words “publisher” and “proprietor” as being synonymous, and meaning the same thing as “printer.’’ To the same effect is Woodward v. Brown, 119 Calif., 293. In the case of Brown v. Woods’ Heirs, 29 Ky., 6 (J. J. Marsh), 11, the court, in construing a statute requiring the “printer” to certify to the orders of publication, held that the term “printer” meant not one who merely performed the mechanical process of printing, but one who had an interest, as one owning the paper in which the order was published, and held that the certificate of the “editor” was not a compliance with the statute and therefore insufficient. The court says: ‘ ‘ The language of the legislature requires something more than the certificate of the ‘printer.’ If it did not, an *520 apprentice, a journeyman, or even a slave, might, by his certificate, furnish the requisite proof, for all these might be ‘printers’ in the strict sense of the term. The act only gives validity to the certificate of the ‘printer in whose paper the order shall have been published.’ ” In Latham v. Roach, 72 Ill., 179, a proprietor is defined as “an owner, a person who has legal right and exclusive title to anything, whether in possession or not.”
In the light of these decisions it may be asked what is the legislative meaning as expressed in the first few lines of the act? viz, “Every printer who shall publish such list * * * shall * * * transmit to the treasurer of the proper county an affidavit of such publication, made by suclr person to whom the fact of publication shall be known. * * * ” It will be noticed that the act does not require the printer who published the list to make the affidavit.' But it requires that he transmit to the treasurer an affidavit of such publication “made by such person to whom the fact of publication shall be known.” Does the phrase “such person” refer to the “owner,” “publisher” or “proprietor,” or some one of them, or does it mean as well any type-setter, foreman, pressman, or apprentice of the paper?
Sec. 3885, Mills’ Annotated Statutes, required this publisher’s affidavit, together with the treasurer’s affidavit, to be deposited with the county clerk and recorder and carefully'preserved in his office. We think this section manifests a legislative intent that these affidavits should become a permanent, enduring record of the fact of publication of the tax list. It is common knowledge that the incumbents of the office of clerk and recorder are constantly chang *521 ing. As a general rule a few years, at the most, marks the period of occupancy of that office by the same person, while the affidavits which are preserved in his office remain, silent unchanging witnesses of the fact of publication. It would appear to be a wise provision of the law that such affidavits are required to be so deposited and preserved, it being a more reliable grade of proof than that depending upon the evidence of living witnesses having knowledge of such publication, whose testimony, however, may or may not be obtainable when needed; and it might be said to be an equally wise provision of the law which prescribes a form of affidavit to be used by the printer who publishes the list, as tending to uniformity in the contents of the affidavits constituting the record of publication. We think it apparent from the act that the legislature intended the affidavit of publication to be executed by some person connected with . the ownership and general control and management of the paper, and its policy, and used the words “printer” and “publisher” to manifest such intent. It does not seem reasonable that the term “printer,” as here used, could have been intended to be synonymous with type-setter, foreman, pressman, apprentice, or other salaried employee of the printing plant. Such employees are constantly coming and going, have no interest in the financial success of the paper, and have no ties to bind them to its continuance, save only the amount of remuneration they receive for their labor. They are ready at any time on short notice to terminate their employment upon offer of greater compensation or more agreeable surroundings. On the other hand the proprietor or publisher is generally compelled to remain with the paper for *522 substantial periods of time, owing to his interest and investment in the same. In fine, if the legislature had intended that so important an affidavit should be made by a foreman, type-setter, apprentice or other salaried employee of the paper, it would have indicated the same by the use of some phrase or term other than the one used in the act.
The wording of sec. 3884 of the statute further confirms the view which we take as to the sense in which the word “printer” is used. The section in question provides, among other things, that “no printer shall be paid for such publication * * * unless,” etc. Clearly it was the purpose of the legislature to impose a penalty on the “printer” for the purpose of insuring the filing of the important document, to-wit, the affidavit. Dornblaser worked for a salary; he was not to be paid for the publication, presumably. Any failure to pay for the publication by the county could not penalize him. Ag’ain, the first sentence of sec. 3884 refers-to “Every printer who shall publish such list,” etc. Now the printer who “publishes the list” must be the printer who publishes the paper in which the list appears. It cannot be 'possible that a paper should have two distinct publishers at the same time. The foreman on a salary is not the publisher; if he is, then we would have the anomalous situation of an owner and proprietor of a paper having charge of its general policy who was not its publisher, a situation that has come to be possible in the east in large cities and on large publications, but which we apprehend no one will contend applies to the conditions that prevailed in the office of the newspaper in which appeared the affidavit under consideration.
*523 Upon consideration of the act itself, and the reasons for its enactment, we have reached the conclusion that the terms “printer” and “publisher” as used in the act refer to a person having some title or proprietary interest in the paper or plant. Therefore a mere salaried employee of the paper or plant, such as foreman or type-setter, is not authorized to make such affidavit. . For the reasons given we think the affidavit under consideration does not satisfy the statute and the trial court properly ruled against its admission in evidence.
Some other assignments of error have been argued by counsel, but we deem it unnecessary to further prolong this opinion by discussing them.
Observing no reversible error in the record, the judgment will be affirmed.

Judgment Affirmed.