## The Kansas Pacific Railway Company, Appellant, v. Bayles, Appellee.

1. Law of the Case.

The conclusions reached by this court upon a former appeal are *res judicata* of the points decided, and must be accepted as the law of the case.

2. Contracts—Common Carriers.

A common carrier is not inhibited to transport persons or freight at less than its schedule rates, but an agreement not to allow the same rates to others is void.

3. Same.

In the absence of a statute, a common carrier may contract to refund to the shipper a certain portion of the schedule rates as rebates, the contract being otherwise unobjectionable.

4. Freight Agent, Presumed Powers of.

In the absence of evidence to the contrary, it may be assumed that the authority of a freight agent of a railroad company, which is in the hands of receivers, is the same as that exercised by him before the management passed into the hands of the court.

5. Judicial Notice.

Judicial notice may be taken of the general features of the manner in which railroad companies conduct their business.

6. Contracts—Receivers.

A contract made by a receiver imposes no legal duty or obligation upon his successor, and damages cannot be recovered against the succeeding receiver for refusing to perform the contracts of his predecessor.

*Appeal from the District Court of Arapahoe County.*

It is unnecessary to repeat in detail the facts alleged in the complaint as a first cause of action, as the same are fully set out in connection with a former appeal, and will be found

in *Bayles v. Kansas Pacific Railway Company,* 13 Colo. 181. It is sufficient for the purposes of this appeal to state that the suit is brought to recover certain rebates agreed to be paid the plaintiff upon freight charges paid to the railroad company.

The contract fixing the rate and rebate, it is alleged, was executed on the part of the receivers of the railroad company by S. R. Ainsley, at the time general freight agent at the city of Denver, under the receivers Henry Villard and Carlos S. Greeley. It is averred that Ainsley made the contract for the receivers, and that it was adopted by them and by their successor, S. T. Smith, who afterwards operated the road as receiver; that at the time the contract was made and during its entire term, Ainsley was operating the railway for the receivers, and that he and they performed it in part by paying rebates according to its terms; that the receivers received the moneys paid by plaintiff for freights under the contract, and used the same in part, in the operation of the road, paying the balance to appellant, and taking a receipt from the railroad company by the terms of which the company obligated itself to pay any and all claims against the receiver, then outstanding; that this claim was existing at the time of Smith's discharge as receiver.

For a second cause of action, it is alleged that during the month of December, 1878, there arrived at Kansas City large amounts of goods, consigned to the plaintiff at Denver, entitled to be carried under said contract, but that the defendant refused to carry the same under the contract, and that the goods, remaining in Kansas City until after the 1st day of January, 1879, the plaintiff caused the same to be shipped to Denver over the Atchison, Topeka & Santa Fe Railroad, and was obliged to pay $216 more than the contract price of carriage, and that he paid said sum on the 25th day of January, 1879. That said goods were holiday goods, and he lost a profit of $500 by failure of defendant to carry them under the contract.

After the case was remanded by this court, the defendant

filed an answer, first, denying each and every allegation of the complaint; second, admitting that Greeley and Villard were receivers at the time the contract was made; admitting that Smith was appointed in lieu of said Greeley and Villard on or about the 25th day of October, 1878, and that he continued to act in such capacity until June, 1879; denying that Greeley and Villard, or either of them, had any authority to make the contract; It denies that by order of the court or otherwise they were ever empowered to make the contract set forth in the complaint; denies the agency of Ainsley, and alleges that immediately after Smith became receiver, learning of this contract, he repudiated the same as not made by authority and as not binding upon him; alleges that the contract was contrary to public policy and void, and not binding upon either the company or the receiver Smith. Afterwards a replication was filed to the new matter in the answer, and upon these issues the cause was submitted in the court below upon the evidence introduced by plaintiff, supplemented by a stipulation of counsel. A verdict and judgment having been rendered for the plaintiff, the defendant again brings the case here by appeal.

Messrs. Teller, Orahood & Morgan, for appellant.

Messrs. Browne & Putnam, for appellee.

Chief Justice Hayt delivered the opinion of the court.

This case is before the court for the second time. Upon the former appeal the sufficiency of the complaint was inquired into and upheld and the case remanded for further proceedings. *Bayles v. Kansas Pacific Railway Company*, 13 Colo. 181.

The conclusions then reached and the reasons therefor are set forth in an exhaustive opinion by Mr. Commissioner Pattison. It is unnecessary to repeat the reasoning of the learned commissioner, or to do more than restate such of

his conclusions as bear directly upon the questions now presented. These may be summarized as follows:

First: Freight charges must be reasonable, and when the circumstances and conditions are the same they must be equal.

Second: An agreement for a rebate from the published tariff rates does not of itself necessarily constitute unjust discrimination, within the meaning of the law.

Third: The contract set forth in the complaint is *prima facie* legal and binding upon the parties, and the burden is upon the defendant to establish facts showing its illegality.

Fourth: It being expressly alleged that the receiver operated the railway and controlled the business of the company, it cannot be assumed in the absence of evidence that the contract was in violation of his authority.

These conclusions are upon the present appeal *res judicata* of the points decided, and must be accepted as the law of this case. *Lee et al. v. Stahl,* 13 Colo. 174; *Johnson v. Bailey and Allen,* 17 Colo. 59; *Routt et al. v. The Greenwood Cemetery Land Co.,* 18 Colo. 132; *Israel v. Arthur,* 18 Colo. 158.

At common law all shippers stand on an absolute equality with reference to transportation by common carriers, and no such carrier has the right to discriminate in favor of one as against another. In obedience to this universally recognized principle the framers of our constitution have provided in section 6, article 15, as follows: " All individuals, associations and corporations shall have equal rights to have persons and property transported over any railroad in this state, and no undue or unreasonable discrimination shall be made in charges or in facilities for transportation of freight or passengers within the state, and no railroad company, nor any lessee, manager or employee thereof, shall give any preference to individuals, associations or corporations in furnishing cars or motive power."

Neither the common law nor the constitutional provision inhibits the making of contracts by a common carrier to transport either persons or freight at less than its schedule

rates, but an agreement not to allow the same rates to others is void. To this extent the law is well settled as will appear by the copious extracts from adjudicated cases, and the citation of numerous authorities to be found in the former opinion in this case.

The foregoing views are based upon sound public policy. To permit a railroad company to unjustly discriminate in the carriage of either freight or passengers, in favor of one shipper as against another, or in favor of one locality as against others, would be destructive of common right, and allow private and public enterprises to be built up or pulled down at the will or caprice of a common carrier deriving its franchise from the people.

It is contended, however, that unreasonable discrimination can be best prevented by declaring all contracts for rebates void ; but this rule has the disadvantage of allowing a common carrier to profit by its own iniquity. It would tolerate the acquisition of business by means of a promised reduction in rates, and at the same time place it in the power of the carrier to retain the higher rate by denying redress to the shipper. It would seem that the public interest would be equally as well subserved in cases of this character by saying to the carrier : " You may contract for a less rate than provided by the published tariff sheets, but you must give all parties shipping under like conditions and similar circumstances, like reduced rates." This is in accordance with the result reached in the case of *Union Pacific Railway Company v. Goodridge*, 149 U. S. 680 ; but the conclusion in that case is based upon a statute of this state. The cause of action in the present case having arisen before the passage of any statute on the subject by the federal congress or the state of Colorado, this case must be determined independently of statute law.

It is contended that Ainsley's authority to execute the contract on behalf of the receivers is not sufficiently shown, and that the contract was not sufficiently established to render the same admissible in evidence. The evidence shows that the contract was executed by Mr. S. R. Ainsley, he being at

the time the freight agent at Denver of the receivers Villard and Greeley, then operating the railroad; that he (Ainsley) occupied the same position with reference to the company prior to the appointment of the receivers, and that he continued in the same position after the resignation of Villard and Greeley, and the appointment of S. T. Smith as receiver. The evidence also shows that the existence of the contract was well known to the general officers of the road and that they undertook to carry out its provisions until receiver Smith assumed control.

It is not to be expected that the receiver of an extended line of railroad, traversing several states and doing a general business, will be personally consulted with reference to all contracts made in the management of the business of the corporation. He must necessarily act through others in many matters of importance, and in the absence of evidence to the contrary, the court had a right to assume that Ainsley's authority under the various receivers was the same as that exercised by him while occupying a similar position before the management passed into the hands of the court. We do not think that any order of court is necessary to authorize the making of contracts with reference to freight rates; such matters are usually left to the officers of the freight department of a railroad company. In the case of *Atchison, Topeka and Santa Fe Railroad Co. v. Headland*, 18 Colo. 477, it is said:—" The manner in which railroad companies conduct their business has been so long followed and with such a degree of uniformity, that courts are bound to take judicial notice of its general features." Under the circumstances we think the contract was properly admitted in evidence.

The agreement being to carry goods from New York, Chicago and St. Louis to Denver, while the appellant's road did not extend east of Kansas City, it is urged that the making of the contract was beyond the power of the receivers. We do not think this contention is well founded. The receivers, subject to the orders of the court from whom their authority emanated, had full power to conduct the business of the cor-

poration according to approved methods of operating such enterprises, and no reason is perceived why such officers should not be permitted to make contracts for the carriage of freight and passengers beyond the limits of the road immediately under their control. Such contracts are usual and perhaps necessary in many instances to the successful operation of the business of common carriers, and are also a great public convenience.

By the former opinion of this court in this case, the burden of showing the illegality of the contract by pleading and proof was placed upon the defendant. The answer thereafter filed contains no allegation to the effect that the enforcement of the contract would inflict any injustice upon any other shipper. It is, however, alleged in the answer that Smith from the first refused to receive or transport merchandise under the contract, or for less than schedule rates, and from the evidence adduced and the stipulation entered into at the trial, it is shown that upon several occasions while Smith was operating the road as receiver, merchandise of plaintiff was refused transportation at less than schedule rates, but the exact date of such refusals does not clearly appear.

Although the contract be established as a valid contract of the receivers Villard and Greeley, it does not follow that it was binding upon their successor Smith. As receiver he cannot be held merely on the contract, but became liable, if at all, solely by reason of his own acts. *Turner v. Richardson*, 7 East, 335 ; *Commonwealth v. Franklin Insurance Co.*, 115 Mass. 278.

Mr. Beach in his work on Receivers, at section 299, says : " Contracts made by a preceding receiver impose no legal duty or obligation on his successor, and damages cannot be recovered at law against the succeeding receiver for refusing to perform the contracts of his predecessor." And in the case of *The Lehigh Coal and Navigation Company v. The Central Railroad Company*, 38 N. J. Eq. 175, it is said, " It is certain the present receiver is no party to these contracts. He neither negotiated them nor assented to them. He has not

been directed by the chancellor to perform them. It is not possible, therefore, for me to see how he was under the least legal duty to perform them, nor under what legal rule he can be held liable, at law, for not performing them. He cannot be said to have broken them, because he was under no obligation to perform them. He had promised nothing, and could not therefore be required to perform anything. He is not the representative of his predecessor. In his character as receiver, his predecessor can have no representative, in the legal sense of that term. He was, at best, a mere agent or instrument, and when he died his power died also, and he left nothing behind him, as receiver, of either property or power, in which he can be represented so as to make his acts binding on his successor. It may be that the contracts of the first receiver bound the trust." See also *Express Company v. Railroad Company*, 99 U. S. 191 ; *Commonwealth v. Franklin Insurance Company*, *supra ; In re Receivers N. J. and N. Y. Railway Company*, 29 N. J. Eq. 67 ; *The Lehigh Coal and Navigation Company v. The Central Railroad Company*, 41 N. J. Eq. 167 ; *Ellis v. Boston, Hartford and Erie Railroad Company*, 107 Mass. 1.

Receiver Smith was not a party to the contract, nor the legal representative of a party, and he was not in law bound to carry out its terms, although the court from which his appointment emanated, in the exercise of its equitable powers might have entertained an application to compel him to do so. He cannot be held to have ratified the contract from the mere fact that a portion of the rebates, accruing before he entered upon the discharge of his duties as receiver, were paid after he assumed the management of the business. It was not inconsistent for him to say that, in so far as merchandise had been transported under the contract during the management of the former receivers, the terms of the contract should control, and at the same time repudiate the contract as not binding upon him as to future shipments ; that for the carriage of goods thereafter offered for transportation the schedule rates should control.

If plaintiff relied upon a ratification of the contract by Smith, the evidence introduced is not sufficient to establish such ratification. If Smith, or his subordinate officers in the management, with knowledge of the terms of the agreement, received and transported freight under it, or did any other act tending to show ratification, the record fails to disclose such fact.

Under the proof adduced it was error to allow a recovery upon the claim for rebates for freight shipped during Smith's administration of the affairs of the company. It was likewise error to include in the judgment the amount claimed under the second cause of action pleaded. Our conclusion upon the case as now presented is that the contract imposed an obligation upon the receivers Villard and Greeley to refund the rebates as specified therein, in so far as plaintiff's merchandise was received and transported during the time they were operating the road as receivers, and that appellant having received the benefit of the excess paid is liable to plaintiff in this action therefor, but that the evidence neither justified a recovery for rebates upon merchandise shipped during the time that receiver Smith was operating the road, nor upon the second cause of action.

As the judgment is for a gross sum and the evidence furnishes no test by which the correct amount may be ascertained, the judgment must be reversed.

*Reversed.*