[No. 7092.]

## OMAHA LUMBER COMPANY v. CO-OPERATIVE INVESTMENT COMPANY.

1.  CONTRACTS—*Construed*—Defendant leased to the plaintiff's assignor certain lands.  The contract provided that it should continue in force for twelve years from its date, or, until such time, within the said period, as the lessee should have cut and removed all timber of dimensions specified.  *Held* that the lessee was not required to fell any timber prior to the completion of the payment of the rentals, royalties, or purchase money specified, and that even after such payment he was still entitled to all that remained of the twelve year period, in which to continue felling and removing the timber.

The same contract provided that the title to all lumber manufactured, etc., should remain in the lessor until the rentals or royalties specified should be paid, but that title should pass "to such proportion thereof as has been paid for and removed, under the terms hereof."  These clauses were held to apply only to the logs cut and removed prior to full payment.

2.  SPECIFIC PERFORMANCE—*Sale of Standing Timber*—Defendant leased to the assignor of plaintiff certain lands, with the right to fell all trees standing thereon, of specified dimensions, and construct and maintain tramways, chutes, saw mills, and other appliances, for felling, removing and manufacturing into lumber all such standing trees. The contract was to endure for the term of twelve years, or until, within the twelve years, the lessee should have cut and removed all timber of the specified dimensions; the lessee to make certain monthly payments, to an amount to be afterwards ascertained by an estimate, made by appraisers mutually chosen, of the amount of the timber, and the lessor covenanted to execute a conveyance of the timber immediately upon the completion of such payments.  Plaintiff having completed the stipulated payments within three years from the date of the agreement, it was *held* that he was entitled to specific performance.

That the title to the standing timber was to remain in the lessor, was held no impediment to this relief; nor that the contract provided for the sale of only merchantable timber, this provision being held not to confer a discretion upon the appraisers making the estimate; nor, the contract prescribing a specified price per thousand, log measure, for the whole of the timber sold, was the provision that the total amount to be paid should be ascertained by the estimate of appraisers.

3. WORDS AND PHRASES—"*Cruise*," is a system in common use for measuring standing timber.

*Error to Denver District Court.*—Hon. GEORGE W. ALLEN, Judge.

Messrs. GOUDY & TWITCHELL and Mr. J. H. BURKHARDT, for plaintiff in error.

Mr. B. C. HILLIARD, Mr. CHARLES W. WATERMAN, and Mr. WILLIAM A. JACKSON, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The complaint in this case was by The Consolidated Lumber Company against the defendant in error, The Co-Operative Investment Company, both of which were Colorado corporations. The amended complaint, alleged a written contract between the defendant and the assignor of the plaintiff, dated February 3rd, 1906, in which contract it was agreed that the defendant was the owner of certain timber lands (960 acres) fully described in the contract, and which lands were by said agreement leased to the assignor of the plaintiff, with the right to construct and maintain thereon railroads, tramways, chutes and other timber appliances, sawmills, and houses for employees; and such possession as might be necessary for the purpose of cutting, removing and manufacturing into lumber and other merchantable product, all of the logs and timber growing upon said lands, that would square at least six inches at the base of the tree.

The agreement provided that in payment for the timber the plaintiff's assignor should pay to the defend-

ant the sum of $833.33 on the 15th day of February, 1906, and a like sum on the 15th day of each month thereafter, until the total amount of the purchase price of the timber should be paid, but with the proviso that upon a final estimate of the amount of the timber upon the lands, then the total at that time unpaid, should be divided into such equal monthly payments as would bring the final payment within a period of three years from the date of the contract, and that the price to be paid for such timber, and all of it, was $1.50 per thousand feet, log measure. The contract was to run for a period of twelve years, and in which time, or any part thereof, the timber might be removed.

It was further stipulated that the sum of $3,250.00 theretofore paid upon a former contract between the parties, should be credited upon this contract in the final settlement. The provision for measurement of the timber so agreed to be sold was, "That for the purpose of ascertaining the full amount of rental or royalties to be paid hereunder, the parties hereto and each shall choose a competent person who shall, beginning not later than July 15th, 1906, completely inspect the lands heretofore described, and carefully and accurately estimate and compute the amount of merchantable timber, cut and uncut upon said land, excepting all timber that squares less than six inches at the base of the tree; and in the event that the two chosen are unable to agree as to the amount of such timber, the two chosen shall mutually agree upon a third person to act with them, and the estimate thereof, upon which a majority may agree, shall be the final estimate as to the amount of such timber, and said amount computed at the rate of $1.50 per thousand feet log measure, shall be the total amount to be paid as rental or royalties under this contract."

It was further provided, that upon full payment of the royalties so agreed, the defendant should execute

and deliver to the second party to the contract, good and sufficient deed or deeds of warranty, conveying all of the timber upon said premises by the contract to be conveyed, and conditioned that the timber be cut and removed within the time limit, that is to say within twelve years.

It was alleged that the contract was assigned to the plaintiff on the 21st day of May, 1906, and that the plaintiff thereafter paid to the defendant the agreed monthly installments to the amount of $19,155.59, and that adding to this the sum of $3,250.00 so agreed to be credited upon the contract, made the aggregate total payment by the plaintiff of $22,416.59.

The complaint alleges that the measurement or cruising, as it is termed, was postponed from time to time to November, 1907, when the plaintiff completed a cruising by a competent person, as per the agreement. That as a result of such cruise there was found to be a total of 8,682,580 feet log measure, which at the rate of $1.50 per thousand feet, amounted to $13,023.75, or in other words, that the amount paid to the defendant at the time of the commencement of this suit was $9,392.84 in excess of the value of all of the timber included in the agreement.

It appears that no timber whatever had, at the time of trial, been cut and removed. It was alleged further that the plaintiff had demanded from the defendant the result of the defendant's cruise, together with the name of the person who made the cruise, and that if there was a difference in the result, that the parties representing each in the matter of the cruise, be required to select a third person to make a cruise.

The prayer was for a specific performance of the contract and that the defendant be enjoined from declaring the forfeiture of the contract. A demurrer to the amended complaint was overruled by the court, after which the defendant filed its answer followed by a replication on the part of the plaintiff. In view of the subse-

quent proceedings it is not necessary to discuss the answer nor the replication.

When the case came on for trial the defendant objected to the introduction of any testimony upon the part of the plaintiff for the reasons: 1. That the complaint and amendments thereto does not state facts sufficient to constitute a cause of action against the defendant. 2. That the complaint and amendments thereto do not show that the court has jurisdiction of the subject matter of the complaint. The court sustained these objections and it is on account of such ruling that the plaintiff is here complaining. It may be stated however, that prior to this time the plaintiff in error, The Omaha Lumber Company, was substituted for the original plaintiff in the case. The contention of the plaintiff in error is based chiefly upon the proposition that an action for specific performance will not lie in the case of a contract of this character.

It is urged that the title to the standing timber, under the terms of the contract, was to remain in the grantor until removed; that therefore it is a contract for the sale of chattels and not for an interest in real estate, and for such reason the contract may not be specifically enforced. This contention cannot be sustained. It will be found upon examination, that the measurement of the timber was to begin not later than July 15th, 1906, and that payment for the entire amount of timber so contracted, was to be made within three years from the date of the agreement, February 3rd, 1906. It was provided by Section "U" of the agreement as follows:

"That upon full payment of said royalty being made, the party of the first part will make, execute and deliver to the party of the second part good and sufficient deed or deeds of warranty, conveying all the timber upon said premises intended by this contract to be conveyed, and conditioned that the same be cut and removed within the time herein limited."

It was also provided; ''This contract shall, unless terminated by the failure of the said party of the second part to carefully keep all the covenants and conditions herein expressed, continue for twelve years from the date hereof or until such time within the said twelve years, as the said second party or its assigns shall have cut and removed from said land all merchantable logs and timber growing and being thereon that will square at least six inches at the base of the tree.'' Hence, under these provisions the plaintiff was not required to cut or remove any of the timber prior to the time of full payment, and if such payment was made as is alleged in the complaint, within three years from the date of the agreement, the defendant still had nine years after the full payment in which to cut and remove the timber.

The defendant agreed to make a warranty deed for the timber immediately upon such full payment. Then under the allegations of the complaint, full payment having been made within three years from the date of the agreement, and no immediate cutting or removal being required, the deed demanded by the plaintiff in this action is for standing timber.

Counsel for defendant contend that paragraphs ''M'' and ''N'' of the contract conflicts with this conclusion. These are as follows: ''M.'' That the title to all lumber or other product manufactured on said land shall remain in the said first party or its assigns until the rentals or royalties herein provided for are paid: N. Provided, That title shall pass to the party of the second part to such proportion thereof as has been paid for and removed under the terms hereof.'' If then, the entire consideration in the contract has been paid, these paragraphs pass from consideration. Beside, these provisions clearly have reference to such timber as may be removed under the agreement prior to the time of full payment.

The authorities are not uniform upon the question as to whether or not growing timber sold and to be removed from the land, is to be regarded as an interest in realty or as purely personal property. But many of these, holding that such timber is to be regarded as personal property, have to do with oral contracts, and it would seem that the determination of each case rests generally with the particular contract considered, and the apparent intention of the parties at the time. Indeed, the cases cited by counsel for defendant in error, deal chiefly with oral contracts. It will be noticed that in this case the defendant granted a lease of the lands for a period of twelve years, and while such lands were to be used by the plaintiff for the purpose only of removing the timber including specifically the right to construct and maintain all necessary equipment therefor, and for the manufacture of such timber into its products, yet it was a grant for possession for such purposes for a term of years, and, if the full consideration and price has been paid by the plaintiff, such lease and the right to possession remains with the plaintiff for the life of the agreement, even though no part of the timber may have been removed. Clearly then, in this case title was to pass upon such full payment, and the transfer of title was at that time to be evidenced by the execution and delivery of a deed of warranty.

That growing timber under such circumstances is to be treated as an interest in real estate, seems to have been conceded by this court in the case of *Eddy v. Hall,* 5 Colo. 576. This case involves the sale of a building, not including the land upon which the building stood. It was there held that the building was real estate, and the court said:

"The agreement of the parties did not, as is insisted, operate to give it the character of personality prior to severance. We do not see that the case is in anywise different in principle from the case of a sale of standing

timber to be cut and severed from the freehold. When severed, the trees become personalty and not before.—— *Claflin v. Carpenter,* 4 Met. 580; *Lawson v. Patch,* 5 Allen, 586, 81 Am. Dec. 765."

In the very well considered case of *Midyette v. Grubbs,* 145 N. C. 85, 58 S. E. 795, 13 L. R. A. (N. S.) 278, it was held that the interest of the grantee of the contract for the sale of growing timber, to be removed within a certain period of years is a determinable fee in real estate, and further, that it will pass to the heirs of such grantee, and not to the administrator. The facts in that case were as follows: At the time of his death Grubbs was the owner of certain standing timber, under and by virtue of three deeds, which conveyed to said intestate all the timber, except the oak, standing and growing upon certain lands, properly described and bounded, which would measure ten inches across the stump at the time of cutting, etc., to him and his heirs and assigns forever, with the right to enter on said lands, build tram roads, etc., and cut and remove said timber at any time, as to the first deed, within eight years from the date, with privilege of two more years on certain specified conditions; and, as to the second and third deeds, at any time within five years from the date, with the privilege of five more years, on certain specified conditions. The intestate having died holding the interest conveyed to him by these instruments, and before the time limited for the removal of the timber had expired, the plaintiff's administrator brought the action against intestates' widow and heir at law, claiming that the timber standing and growing on said land embraced in the deeds was personal property.

In a very comprehensive review of that decision by the editor of the L. R. A. it is said: "While there are a few exceptional cases, the great weight of the authorities lies with *Midyette v. Grubbs,* and holds such a purchase to be one of realty." In this note, as well as in the decision,

a great number of authorities are cited to sustain the conclusion, not necessary to repeat here. Many of these authorities are cited and commented upon in the briefs of counsel in this case. We think that upon a careful examination of the authorities this view is well sustained and should be adopted in this case.

We do not think that the general rule that courts of equity will not generally decree specific performance of contracts relating to chattels, can have application as to this particular contract.

It seems to be quite well settled that a contract for the sale of timber such as we are now considering, may be specifically enforced. The English rule was stated to be:

"Thus a contract for sale of timber can be specifically executed, although the timber is to be cut down at a future time or at intervals, and the money to be paid by installments. It is a certain contract, and the manner of dealing with the thing sold, by future cuttings, is no objection to a specific performance.

The one man sells the timber, and the other pays for it the price contracted for. Here part of this contract is at once capable of a specific execution; This admits of no doubt."—*Gervais v. Edwards,* 2 Drury & Warren, 83, 4 Ir. Eq. 555.

In the case at bar it is not only alleged that the contract had been accepted but that the entire consideration had been paid. In other words in so far as the plaintiff is concerned the contract was fully executed. And a contract may be executed on one side and executory on the other, 9 Cyc. 244. In considering a very similar case it was said by the supreme court of North Carolina in a recent case:

"The next objection urged is that the subject matter is but growing timber and not the body of the land, and that equity will not require specific performance of that kind of contract, but will award damages in lieu thereof.

Some color is given to that position by the cases of *Paddock v. Davenport,* 107 N. C. 711, 12 S. E. 464, and *Bomer v. Canady,* 79 Mis. 223, 30 So. 638, 55 L. R. A. 328, 89 Am. St. 593. But we find upon a critical examination of the cases, that neither of them sustains the contention. The contract in the first-cited case provided for the sale of merchantable ash, poplar and cherry trees, at the price of fifty cents and one dollar per tree, to be immediately removed. The refusal to decree specific performance is based upon the temporary character of the contract and because the breach is easily compensable in damages. In the other case the contract required the defendant to saw up the timber into lumber and ship it to complainants. The court held that it would not specifically enforce a contract to cut trees from land and saw them into lumber, 'if the contract be indefinite and uncertain as to the trees to be cut.' The contract we are asked to specifically enforce differs materially from those we have mentioned. The instrument defines with accuracy the land upon which the timber is growing—described it as standing timber ten inches in diameter, and such as may attain that size when cut, and gives ten years within which to cut and remove it. The price to be paid, as well as time of payment, is clearly stated. The contract is definite and certain as to its subject-matter, its stipulation, its purposes, its parties and the circumstances under which it was made. Its meaning is plain and its various provisions carefully and clearly stated. There is a valuable consideration; the agreement is mutual. Specific performance is not only entirely practicable, but is necessary, in order to give the plaintiff the full benefit of the contract, and there is nothing inequitable in its enforcement. In short, the contract has every requisite which is usually regarded as necessary to authorize a court of equity to compel specific performance. *Pomeroy Eq.,* §§1400 to 1505. Then, again, the contract does not deal with personal property. It plainly

savors of the realty.  Growing trees are often, especially in the older cases, regarded as a part of the land, and the sale thereof as a sale of an interest in land.  28 Am. and Eng. 537, and cases cited.  In this state growing trees have ever been regarded as part of the realty, and deeds and contracts concerning them are governed by the laws applicable to land.—*Bunch v. Lumber Co.,* 134 N. C. 116; 46 S. E. 24; *Hawkins v. Lumber Co.,* 139 N. C. 162, 51 S. E. 852; *Mizell v. Burnett,* 49 N. C. 249, 69 Am. Dec. 744; *Bryant Timber Co. v. Wilson,* 151 N. C. 154, 65 S. E. 932, 734 Am. St. 902.''

The case at bar presents every element of certainty mentioned in that case.  Our courts have held that the mere fact that the contract involves personalty alone is not determinative of the question as to whether or not the contract may be specifically enforced and that specific performance may be decreed where the subject matter may be purely personal.  The test being that the party seeking equitable relief cannot be fully compensated in action at law.

In *Colorado L. & W. Co. v. Adams,* 5. Col. App. 190, 37 Pac. 39, that court said: ''The old rule, that the remedy must pertain to an interest in realty, has been relaxed, and modern decision decree the performance where the subject-matter is purely personal.  See 1 Story, Eq., Jur., §§724, 717.  In *Frue v. Houghton,* 6 Colo. 318, the rule as to jurisdiction in equity is clearly stated to be: 'The ground of the jurisdiction, when assumed, is that the party seeking equitable relief cannot be fully compensated by an award of damages at law.  When, therefore an award of damages would not put the plaintiff in a situation as beneficial as if the agreement were specifically performed, or where compensation in damages would fall short of the redress to which he is entitled, a specific preformance may be decreed.'   See Fry, Spec. Perf., § 10,

and note; Pom. Spec. Perf., §§ 7, 8; 3 Pom. Eq. Jur., § 1402, and cases cited.''

*Frue v. Houghton, supra,* was an action to specifically enforce an agreement to transfer and deliver certain mining stocks. That courts of equity have jurisdiction to decree specific performance of agreements, whether relating to real or personal property, was stated to be the settled rule. It was held that there was not a sufficient or adequate remedy at law in such a case because of the uncertainty of value, and upon this point the court said:

''This case comes within the principle decided in *Treasurer v. Commercial Mining Co.,* 23 Cal. 391. Here, as in California, we have numerous mining corporations. It may likewise be said as to many of them, that their business and mining operations are in a peculiar condition; their stock is of uncertain value, and difficult to substantiate by competent testimony; yet it may have a peculiar value to those acquainted with their affairs. The risk also of the personal responsibility of individuals and corporations is equally great.''

The present case would appear to be clearly within the rule as there stated.

It is alleged in the complaint that the right of plaintiff to take possession and occupy the use of the premises until the 3d of February, 1918, for the purpose of constructing and maintaining thereon during that period of time, railroads, tramways, chutes and other timber appliances, and erecting, maintaining and operating sawmills, and erecting and occupying houses for its employees for the purpose of cutting, manufacturing into lumber and other merchantable products, logs and timber agreed upon, is a valuable right but that such value is indeterminable, and further, that its right under the contract to cut and manufacture the timber into lumber and other merchantable products, and to sell and move it, would result in profits of great value, and that if permitted to

carry out its contract and lease, it will realize large profits therefrom; that timber lands of that character and quality are very scarce, and become scarcer every year because of the fact that large amounts of lumber are manufactured from that character of timber; that such timber manufactured into lumber that may be manufactured therefrom is continually increasing in value, and will so continue from year to year during the whole period of the contract. That as the timber and lumber that can and will be manufactured therefrom becomes scarcer and increases in value, the profits the plaintiff can and will realize therefrom will increase, and amount to a large and constantly increasing sum, but as to what the amount of the increase in the value of the timber and lumber will be, is impossible to determine or even approximately estimate. That the plaintiff is authorized to cut and manufacture into lumber all trees growing upon said premises that would square at least six inches at the base, and that said trees consisting of growing timber which are constantly increasing in size, and that by reason of such fact the number and size of the trees the plaintiff is authorized to cut, and the amount of lumber that the plaintiff can and will manufacture therefrom will increase during the terms of said lease, but the amount of such increase cannot be approximately determined.

The case of *St. Regis Paper Co. v. S. C. Lumber Co.*, 173 N. Y. 149, 65 N. E. 967, involved a contract for the sale and delivery by the lumber company to the paper company of twelve thousand cords of pulp wood a year, for a period of ten years, with an option to the plaintiff to extend the term of the contract for another period of ten years.

The same contentions made here were urged in that case. In that case the lumber company at the time, was the owner of 32,000 acres of land, and the contract was for the sale of all the timber above a specified size as here;

also that the grantor was to saw the logs and deliver to the paper company. It was there said:

"From the situation of the parties as disclosed by the contract and the allegations of the complaint, which for the purpose of this appeal stand admitted, it is apparent that the plaintiff's remedy at law is inadequate. Any attempt to prove damages that might result to the plaintiff by the non-performance on the part of the defendant would encounter insuperable difficulties, as the contract extends over a term of ten years, and at the election of plaintiff may cover a period of ten years more." To the same effect is the case of *Stuart v. Pennis*, 91 Va. 688, 22 S. E. 500, where the court said: "The true equity rule is thus laid down in Story's Eq. J., § 33: 'The remedy must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for if at law it fall short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief and secure the whole right of the party in a perfect manner, at the present time, and in future; otherwise equity will interfere and give such relief and aid as the exigency of the particular case may require.' The remedy at law would fall short in the case at bar of measuring up to this rule. The vendee had the right, if he chose to exercise it, to let the trees remain standing upon the land for a period of three years. Where the fulfillment or execution of a contract may extend through several years, it would be difficult to estimate the damages. His profits, depending in such case on future events, could not be estimated in present damages without being largely conjectural. As it is said by Pomeroy in his book on Contracts, § 15: 'To compel a party to accept damages under such circumstances is to compel him to sell his possible profits at a price depending on a mere guess.' "

In *O'Donnell v. Chamberlin,* 36 Colo: 395, 91 Pac. 39, 10 Ann. Cas. 931, involving a contract for the sale of a court judgment of foreclosure of a mortgage, it was held that specific performance would be enforced. Mr. Justice Gunter after a review of the authorities, concluded with a statement which may well be reiterated as applicable to this case:

"The principle of law announced by the foregoing authorities, and by others not cited, is, that if under the facts of the particular case before the court there is not an adequate remedy in an action at law, specific performance will lie; whether the action can be maintained depends upon the facts of each particular case. In the case before us an action at law will not satisfy the justice of the case, because it will not give to appellant the specific securities which he for good reasons contracted to purchase of Stratton, and because the damages by appellant otherwise sustained by a breach of the contract cannot be estimated in an action at law."

The next contention of the defendant is that the contract cannot be specifically performed because it leaves to arbitrators or appraisers the determination of value or price of the timber. If the contract so provided, this contention might well be sustained, but it does not. The contract provides for the uniform and specific price of $1.50 per thousand feet log measure, for the whole of the timber contracted to be sold, and provides a fixed and sufficiently definite plan of measurement. This method of measurement or computation, is termed in the contract, a cruise. It is a system for the measurement of growing timber in common use, and must have been well understood by the parties to the agreement, and by which they clearly intended to be governed.

There is no reason why a court may not order such computation, and in the exact manner provided in the contract. Clearly there is no element of discretion upon

the part of the persons who were to be selected to make such computation. This in no sense is different in principle from survey of lands in a case where the price per acre is agreed upon. The principle is stated in *Howison v. Bartlett,* 141 Ala. 593, 37 So. 590, to be:

"By our construction of the stipulation for a survey of the land, it was not intended to make the selection of a surveyor, or the act of surveying, essential to the completion of the sale. Such survey was provided for only as an incident of the sale and for the purpose of measuring and marking out the property constituting the subject-matter of the contract."—*Chicago, K. & Sag. Ry. Co. v. Lane,* 150 Mich. 162, 163 N. W. 22; *Castle Creek Water Co. v. City of Aspen,* 146 Fed. 8, 76 C. C. A. 516, 8 Ann. Cas. 660; *Stuart v. Pennis, supra; Bryant Timber Co. v. Wilson, supra; Worch v. Woodruff,* 61 N. J. Eq. 78, 82, 47 Atl. 725.

It is further urged that the timber contracted for was to be "merchantable timber" and that this required the exercise of judgment and discretion upon the part of those who were to make the computation. This contention cannot be sustained. The term "merchantable" is one in common use and ascertainable by proof.—*Hayes v. McLin,* 115 Ky. 39, 72 S. W. 339; *Tenny v. Mulvaney,* 9 Ore. 405; *Michigan Iron and Land Co. v. Nester,* 147 Mich. 559, 111 N. W. 177; *Teachout v. Clough,* 143 Mo. App. 474, 127 S. W. 672.

Under the allegations of the complaint then, which must be accepted as true for the purposes of the case, the plaintiff has bought and paid for all the timber specified in the contract, and has paid in addition thereto, an excess of nine thousand dollars above the contract price, without having received anything in return. Justice and equity demand the enforcement of this contract upon the part of the defendant.

The judgment is reversed and the case remanded for a new trial in accordance with the views herein expressed.

CHIEF JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.

Decided May 5, A. D. 1913.   Rehearing denied June 2, A. D. 1913.