[No. 12982.   Department One.   December 11, 1915.]

W. R. CRAWFORD, *Respondent*, v. GEORGE W. GORDON *et al.*, *Appellants*, SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY *et al.*, *Defendants.*[1]

RECEIVERS—CONTRACTS — VALIDITY — RATIFICATION — ADOPTION BY SUCCESSORS—APPOINTMENT — JURISDICTION.   A conditional sales contract for the purchase of cars, entered into by receivers appointed by the Federal court without jurisdiction, and whose appointment was subsequently held void and revoked for that reason, is not void, but merely voidable, and is ratified by succeeding receivers appointed by the state court, who came into possession of the cars and used them without repudiating the contract promptly or within a reasonable time.

RECEIVERS — APPOINTMENT — JURISDICTION — DE FACTO OFFICERS—CONTRACTS—VALIDITY—POWER TO DETERMINE.   Receivers appointed by a Federal court without jurisdiction because of the pendency of a case in the state court are *de facto* officers of a court of competent jurisdiction until the question of jurisdiction is determined; and in deciding that it has no jurisdiction, the Federal court has no power to determine any other fact or the binding force of contracts made by the *de facto* receivers.

RECEIVERS—CONTRACTS—OF PREDECESSORS — ADOPTION — REMEDIES.   Receivers, coming into the possession of property purchased by illegally appointed predecessors under a conditional sales contract, which was voidable, are not entitled to retain the property and pay its reasonable value, but must repudiate the contract or pay the agreed price.

SAME.   In such case, the vendors are not bound to elect whether they would stand upon their contract of sale or waive it and take the reasonable value of the property; the duty to elect within a reasonable time being upon the receivers who were using the property and asserting ownership; since the rule giving the receivers the right to adopt or reject the contract is not reciprocal and the vendors were bound by the sale if the receivers so demanded.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 29, 1915, in favor of the plaintiff, denying recovery of a claim against an insolvent

[1]Reported in 153 Pac. 363.

corporation in receivership proceedings, after a hearing before the court.    Reversed.

*Higgins & Hughes* (*Hyman Zettler*, of counsel), for appellants.

*Scott Calhoun*, for defendants.

CHADWICK, J.—Prior to July 1st, 1912, and while certain receivers, appointed by the Federal district court at the suit of Peabody, Houghteling & Company, had charge of and were operating the defendants' property, the appellants sold to the Federal receivers six cars, at an agreed price of $43,800.    The receivers paid $8,800 on the purchase price and executed and delivered to the appellants, under the direction of the court, equipment bonds of the face value of $35,000.    At the same time, this proceeding had been begun and was pending in the state courts.

The right of the Federal court to appoint receivers and to take charge of defendants' property was first sustained.    That court thereafter reversed its holding, whereupon the receivers, who had theretofore been appointed by the state court, assumed charge of the property.    To clear the records, the judge of the Federal district court made an order on the 29th day of August, 1912, which, *inter alia*, held for naught the appointment of the receivers, and further, that:

"All of the orders heretofore made by this court in this cause authorizing and allowing the said receivers to borrow money or to purchase cars and pay for the same partly in cash and partly by the issuance of receivers' certificates, be and the same are hereby vacated, set aside and held for naught, in so far as the same affects the defendant, its property and the subject-matter of the controversy in the courts of the state of Washington, there being a lack of jurisdiction in this court to make the same and each and every one thereof."

At the time this order was made, the cars had been delivered and had been in use for nearly two months.    The cars had been sold under a contract of conditional sale reserving

title in the vendors. The contract was filed for record in the office of the auditor of King county on the 15th day of July, 1912.

On the 7th day of December, 1912, appellants made out a claim setting forth the contract and notifying the receivers that they claimed title to the cars subject to the terms of the contract. Service of the claim was admitted by the receivers on the 16th day of December, 1912. It is stated in the briefs, and we understand the fact to be, that the receivers indorsed upon the original claim the words—"Proof required."

No further proceedings were had until the 22d day of September, 1913, when appellants filed a petition praying for an order requiring the receivers to forthwith pay the bonds then matured and the accumulated interest. No disposition seems to have been made of this petition. A like petition, praying for additional relief and asking that the court proceed to hear appellants' claim, was filed and brought on for hearing on March 20th, 1915.

The trial judge held the "equipment agreement" under which the cars were sold, and the bonds issued by the Federal receivers, to be wholly void and in no way binding upon its receivers, and refused to permit appellants to prove the reasonable value of the cars unless they would waive, in open court, all claims under the "equipment agreement" or contract of sale. This appellants refused to do, and the court "ordered and adjudged that the claim of said claimants, George W. Gordon and Charles N. Henderson be and the same is hereby disallowed, and is hereby declared to be null and void, and that said claimants take nothing by their claim filed herein."

At the time the matter was before the lower court, counsel for appellants admitted in open court that the act of the Federal receivers was a void act. Upon this admission and the order of the Federal court holding all of the acts of its receivers for naught, the trial judge seems to have based his

order, and upon this premise counsel for respondents rest their case.

That the order was void in the sense that the present receivers were not bound to carry it out may be admitted, but we cannot agree that it was inherently void or vicious. That the equipment was and is necessary to the operation of the defendants' property may be inferred from the fact that the receivers have held it under a claim of ownership and have refused to redeliver or to pay for it. They claim it as upon a conversion, subject to a judgment for its reasonable value.

The contract was voidable but not void. Like any lawful contract it was subject to ratification. A ratification may be by express promise or by conduct of the parties. The term void can be accurately applied only to such contracts as are mere nullities because they are against law, illegal, criminal, or in contravention of law and incapable of confirmation or ratification. 3 Bouvier, Law Dictionary (Rawle's 3d ed.), 3406. Surely the receivers might have ratified the contract in terms by a subsequent written approval, and we apprehend it will not be contended for a moment that they could have adopted the contract as made, without express affirmance, and compelled its performance or recovered damages for its breach. If they could have done this, why can they not be held to its ratification by conduct, for mutuality is a prime essential of a contract and courts will not release a party who has had the benefit of a contract and hold the other except in exceptional instances.

No cases just like the case at hand have been cited, nor have we found any. But if authority be essential, the principle involved may be sustained by reference to analogous cases. We see no difference between this case and one where a receiver comes into a property burdened with a lease, or a contract providing for payments under an extended term, or an executory contract that puts a burden upon the trust property.

When a receiver comes into possession of property which is held under contract it is his duty primarily to take possession of it, but he does not, by such act, adopt the contract. *Scott v. Rainier Power & R. Co.*, 13 Wash. 108, 42 Pac. 531; *Casey v. Northern Pac. R. Co.*, 15 Wash. 450, 48 Pac. 53. But all the books hold that a contract that is voidable—that is, no contract if the receiver elects so to declare —may be ratified by conduct as well as by an express affirmation. The rule and its limitation is stated in the case of *Spencer v. World's Columbian Exposition*, 163 Ill. 117, 45 N. E. 250. The limitation is thus expressed:

"But we have been referred to no case holding that where the lease or contract is of itself a thing of value to the creditors, and the receiver, under the order of the court, takes possession of the premises and conducts the business which the insolvent had been unable to continue, and, without any act of disaffirmance or notice that he would not be bound by the contract, completes the term and receives the profits and all the benefits from such possession and continuance of the business, the receiver may then repudiate the contract and pay only on the basis of a *quantum meruit.*"

See, also, High, Receivers (4th ed.), p. 273; *Pennsylvania Steel Co. v. New York C. R. Co.*, 198 Fed. 721; *Street v. Maryland Cent. R. Co.*, 59 Fed. 25; *Sunflower Oil Co. v. Wilson*, 142 U. S. 313; *Central Trust Co. v. Continental Co.*, 86 Fed. 517; *De Wolf v. Royal Trust Co.*, 173 Ill. 435, 50 N. E. 1049; *Easton v. Houston & T. C. R. Co.*, 38 Fed. 784; *Dayton Hydraulic Co. v. Felsenthall*, 116 Fed. 961; *In re Newdigate Colliery*, 1 Ch. (1912) 468, Ann. Cas. 1912 C. 949.

So, too, it is generally held that a receiver is not bound by contracts made by a preceding receiver, and that a succeeding receiver is not liable in damages for refusing to perform the contracts of his predecessors.

Stripping this case to its bare elements, we have the same situation as if the present receivers were repudiating a contract made by their own predecessors, for whatever process

of reasoning we employ, it all comes down to this, that here is a transaction that the present receivers were not bound, in law, to carry out.

In *Kansas Pac. R. Co. v. Bayles,* 19 Colo. 348, 35 Pac. 744, a contract made by prior receivers and repudiated by a present receiver was considered by the court, and although it was held that the contract made by the prior receivers was a valid contract, it did not follow that it was binding upon their successors. The court quoted from the *Lehigh Coal & Nav. Co. v. Central R. Co.,* 38 N. J. Eq. 175:

"It is certain the present receiver is no party to these contracts. He neither negotiated them nor assented to them. He has not been directed by the chancellor to perform them. It is not possible, therefore, for me to see how he was under the least legal duty to perform them, nor under what legal rule he can be held liable, at law, for not performing them. He cannot be said to have broken them, because he was under no obligation to perform them. He had promised nothing and could not therefore be required to perform anything. He is not the representative of his predecessor. In his character as receiver, his predecessor can have no representative, in the legal sense of that term. He was, at best, a mere agent or instrument, and when he died his power died also, and he left nothing behind him, as receiver, of either property or power, in which he can be represented so as to make his acts binding on his successor."

In this case the receivers, being in essentially the same position, did not repudiate the contract, but by every act that would mark an affirmance and ratification of it, if this were a controversy between private parties, adopted and acted upon it.

Counsel meets these cases by the suggestion that in all of them there was a valid subsisting contract which but for the receivership would have been binding upon the insolvent estate and a charge in equity upon its property. This may be admitted without doing violence to the principle invoked. The fact remains that, in all cases where the question has arisen, there was either a voidable contract or one subject to re-

pudiation. If it be said that, in the cases cited, the contract was valid as against the company or party but for the receivership, it may be said likewise that the contract in this case would have been valid if the Federal court, which, barring the fact that there had been a prior assertion of jurisdiction on the part of the state courts, had continued to administer the trust through its own receivers. That court had jurisdiction of the subject-matter and jurisdiction to determine its own jurisdiction, and while its receivers were in charge of the property, they were at least *de facto* officers of a court of competent jurisdiction. In finally deciding that it had no jurisdiction to proceed as against the state court, it had no power or authority to hold anything beyond the fact that it had acted without jurisdiction. The appellants were not parties to that proceeding, and the legality and binding force of their contract was, and is, a matter for the state court to determine under the general rules of law and equity.

Suppose the appellants had not delivered the cars and the receivers had brought an action setting up the contract and the initial payment and undertook to put the owners to the hazard of a trial to determine the reasonable value of the property, instead of offering to pay the contract price. We think it can be said, with entire assurance, that the complaint would be held bad on demurrer. A court would necessarily say that, if the receivers did not want to take the property under the contract and pay such price as the owners were willing to take, they would be under a legal duty to repudiate the contract *in toto*.

We know of no case holding, nor has any been cited by counsel, that will allow an agent or an officer of the court to plead his own tort to defeat a contract. Such, in effect, is the receivers' present attitude. Not having disaffirmed the contract promptly or within a reasonable time, they will not now be heard to say: We repudiate the written contract under which you reserved title; we will deny you a recovery

upon your contract and compel you to affirm our tort and take whatever may be awarded to you upon a *quantum valebant*.

The title to the cars is in appellants. They did not part with it when they sold to the Federal receivers, nor will the law compel them to part with it by resort to the fiction of a conversion. Having title, they may select their own remedy, and although the contract of sale may have been a voidable thing, they cannot be compelled to accept a contract in lieu thereof which has been made for them by the receivers; that is to say, take a substitution of a contract to sell upon *quantum valebant* for a contract to sell at an agreed price. Courts have great power, but they cannot make contracts. If they cannot, it follows that their agents and servants cannot coerce others into an involuntary contract.

The receivers knew the sale was voidable. They had the property in possession and in use, and it was up to them to repudiate it within a reasonable time or to bring it to the notice of the court. When they said, "Proof required," and then continued to use the property without calling for proof beyond the *prima facie* case made by the appellants, they ratified the contract.

It would not be fair dealing, either on the part of individuals or the officers of the court, to hold property, parted with in good faith upon a contract merely voidable, upon the theory that the seller is remediless and therefore bound to resell upon such terms as his adversary may dictate. The power of the receiver is the power of the court, and we are not disposed to sanction by judicial decree anything done or omitted to be done by the court's officers which would put the court in the attitude of sanctioning a tort.

Neither do we think that appellants were bound to elect whether they would stand upon their contract or waive it and take the reasonable value of their property. The duty to elect within a reasonable time was upon the receivers.

*United States Trust Co. v. Wabash Western R. Co.,* 150
U. S. 287; *Sparhawk v. Yerkes,* 142 U. S. 1; *Sunflower Oil
Co. v. Wilson, supra.* They were bound to deny or affirm
the contract under which the property had come to the estate
which was subject to their administration. They did not
disaffirm until called to the bar of the court. As against
this tardy disaffirmance, we must measure the continued use
and assertion of ownership in the property.

Counsel for respondents say in their briefs: "if they
[meaning appellants] desire the return of the cars they
should have returned the money paid them under the terms
of the void obligation." Counsel have failed to appreciate
the exceptions to the general rules of law as they are ap-
plied to receivership cases. Appellants had no lawful right
to repudiate the contract upon the theory that it was void.
The receivers alone were privileged to do that.

"The rule which gives to the receiver the right to adopt
or reject the contracts of the defendant is not reciprocal,
and hence is anomalous. It does not matter how burden-
some the contract may be to the latter, he must render per-
formance, if the receiver so demands. The power to adopt
or reject the defendant's contracts, to accept those which
are of advantage to the trust estate, and reject the burden-
some ones, is restricted to the receiver." Beach, Receivers
(Alderson's ed.), p. 332, § 328.

It is because of the rule which binds the adversary party
to his contract that the principle of ratification is held to
apply to receivers. The rule that binds the adversary party
to his contract while making it optional with the receiver
compels its corollary, in proper cases; that is, that the re-
ceiver must elect whether he will ratify or reject the con-
tract, and that within a reasonable time.

The judgment of the lower court is reversed, and the cause
is remanded with directions to allow appellants' claim.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., con-
cur.