Lee **BERNHARDT** and Adrienne **Bernhardt,** Plaintiffs–Appellees,

v.

Robert L. **HEMPHILL** and Jane L. **Hemphill,** Defendants–Appellants.

No. 93CA1117.

Colorado Court of Appeals, Div. IV.

June 2, 1994.

David P. Smith, Durango, for plaintiffs-appellees.

Richard L. Emmett, Durango, for defendants-appellants.

*Opinion by Judge DAVIDSON.*

In this action for specific performance of two real estate time-share contracts, defendants, Robert and Jane Hemphill, appeal from the judgment entered in favor of plaintiffs, Lee and Adrienne Bernhardt, on plaintiffs' complaint and defendants' counterclaim. We affirm in part, reverse in part, and remand.

Defendants owned a motel known as the Adobe Inn and were shareholders of the Durango Management and Development Company (Durango) which was formed to market and manage vacation time-share units at the motel. In 1984, defendants sold the motel to Elmwood Park, Ltd., a limited partnership, together with all the stock of Durango. The balance of the purchase price was payable by a note secured by a deed of trust against the motel.

In 1986, plaintiffs and another party purchased the motel from Elmwood Park, Ltd. Plaintiffs, defendants, and Elmwood Park, Ltd., entered into a "Modification Agreement" which provided, in pertinent part:

> Since the Buyers have not agreed to assume the Promissory Note [and] Deed of Trust [executed by Elmwood Park, Ltd., in favor of defendants], Seller shall in no manner be released as to the herein described Promissory Note indebtedness and Seller's primary obligation on the Promissory Note [and] Deed of Trust ... shall not be relieved until the Promissory Note is paid in full.

Pursuant to the terms of the sale, plaintiffs made payments into escrow for subsequent disbursement. Plaintiffs defaulted on their payment obligations after December of 1987. On February 5, 1988, defendants served notice of default and consequent acceleration of their note upon Elmwood Park, Ltd.

During February and March 1988, plaintiffs purchased two two-week time-share units in the motel. The contracts were signed by plaintiffs, on behalf of themselves as purchasers, and on behalf of Durango and the motel as sellers. Durango, however, had been suspended in 1987 according to the records of the Colorado Secretary of State. These contracts were not recorded.

Defendant Robert Hemphill (Hemphill) was appointed receiver of the motel in October 1988. While operating as receiver, Hemphill honored plaintiffs' time-share contracts. In March of 1988, defendants purchased the property at a public trustee sale. After acquisition of title, defendants refused to honor plaintiffs' time-share contracts.

Plaintiffs brought this action seeking specific performance of the time-share contracts. Defendants counterclaimed for a deficiency under the foreclosure on the Elmwood Park, Ltd., deed of trust in the amount of $82,-518.92.

Plaintiffs requested partial summary judgment on the counterclaim. That request was granted by the trial court, together with an award of attorney fees on the ground that the counterclaim lacked substantial justification. Following a bench trial on the remaining issues, the trial court entered judgment in favor of plaintiffs for specific performance of the time-share contracts. Plaintiffs received an additional award of attorney fees pursuant to the terms of the contracts.

## I.

Defendants argue that entry of summary judgment on their counterclaim and the consequent award of attorney fees was in error because the language of the modification agreement was ambiguous and could not be resolved without an evidentiary hearing as to the parties' intent. We disagree.

### A.

Whether a contract is ambiguous is a question of law. *Bledsoe v. Hill,* 747 P.2d 10 (Colo.App.1987). The instrument must be construed as a whole and its language examined in harmony with the plain meaning of the words. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo.1990).

The transfer of property subject to an existing lien raises no presumption that the transferee also assumes the underlying obligations on the encumbrance. *Lloyd v. Lowe,* 63 Colo. 288, 165 P. 609 (1917); *cf. Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.,* 831 P.2d 908 (Colo.App.1991)

(purchaser who bought real estate subject to liens and encumbrances did not assume the underlying obligations). Upon review of the modification agreement, we are satisfied that it is not ambiguous and was properly construed by the trial court to impose no duty upon plaintiffs to assume or satisfy the obligations of the Elmwood Park, Ltd., promissory note and deed of trust.

### B.

■ The decision to award attorney fees on the ground that a claim lacks substantial justification is committed to the sound discretion of the trial court. Section 13–17–101, et seq., C.R.S. (1987 Repl.Vol. 6A); *Weber v. Wallace,* 789 P.2d 427 (Colo.App.1989).

■ Here, our review of the record leads us to conclude that the trial court properly determined that the counterclaim lacked substantial justification as contemplated by the statute because a review of the plain language of the modification agreement prior to filing the counterclaim would have revealed the lack of support for such a claim. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984). We further conclude that the trial court properly considered the required statutory factors in making the award. *See In re Application of Talco, Ltd.,* 769 P.2d 468 (Colo.1989).

### C.

■ Plaintiffs have requested attorney fees attributable to defendants' appeal of the deficiency issue.

Although defendants have no grounds for relief on their deficiency claim, because we do not consider defendants' appeal to be frivolous, plaintiffs' request for appellate attorney fees and costs is denied. *See* C.A.R. 38(d); *Sa Bell's, Inc. v. City of Golden,* 832 P.2d 974 (Colo.App.1991); *see also Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

### II.

Defendants next argue that the trial court erred in determining that the contracts were valid and enforceable. We agree that the contracts were voidable, but because they may have been ratified, we must remand the matter to the trial court for further findings on this issue.

### A.

■ Defendants contend that, because plaintiffs purchased the time-share contracts from themselves, the contracts were illusory. We agree.

At the time plaintiffs purchased the time-share contracts, they were also the owners and operators of the Adobe Inn. The time-share contract provides that: "Adobe Inn has the right to rent out for its own account any accommodations not reserved or if reservations are not kept."

Thus, insofar as plaintiffs' time-share contracts purported to confer the right to use Adobe Inn accommodations, the contracts represent an attempt by plaintiffs to purchase what they already owned. Plaintiffs were the sole owners and operators of the motel at that time, and thus, although plaintiffs paid the purchase price into the motel operating account, they essentially paid themselves.

Because plaintiffs did not give up anything of value and because no rights were created that the plaintiffs did not already possess, the contracts were wholly illusory. *See Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 424 P.2d 380 (1967) (agreement which left sole discretion whether or not to perform to one party was illusory); *Mountain States Telephone & Telegraph Co. v. Department of Labor & Employment,* 38 Colo.App. 298, 559 P.2d 252 (1976) (leave of absence agreement which did not require employer to give up its rights to refuse to re-employ worker for any reason lacked enforceable contractual provisions and was illusory). We therefore conclude that the trial court erred as a matter of law in finding the contracts to be a valid agreement.

### B.

■ Plaintiffs contend that, nonetheless, the trial court was correct in enforcing the contracts because Hemphill, in his capacity as receiver for the motel property, treated

the contracts as valid and thereby ratified them. We agree that a receiver may ratify an otherwise voidable contract but, because the trial court erroneously assumed the validity of the contract, it did not reach the issue of ratification.

■ A receiver may ratify an otherwise voidable contract by conduct as well as express affirmations. *See Crawford v. Gordon,* 88 Wash. 553, 153 P. 363 (1915) (receivers who were not parties to a voidable contract nonetheless ratified the contract through actions manifesting affirmance rather than repudiation); *cf. Kansas Pacific Ry. Co. v. Bayles,* 19 Colo. 348, 35 P. 744 (1894) (a receiver who subsequently ratifies a contract made by predecessor receivers is bound by the obligation).

Here, although Hemphill could have avoided the contract, he may have ratified the contract by his actions after assuming his duties as receiver. These are issues of fact which must be determined by the trial court on remand.

As a corollary, although defendants were not parties to the time-share contracts, the trial court, as a court of equity, may also consider whether—because of the actions taken by Hemphill in his capacity as receiver—ratification, or equitable doctrines such as estoppel pertain to defendants as purchasers. *See Corporation of Presiding Bishop v. Board of County Commissioners,* 689 P.2d 738 (Colo.App.1984).

Accordingly, on remand the trial court should determine, *inter alia,* to what extent, if any, defendants ratified the contracts by conduct or by affirmation, before or after purchasing the property at the public trustee sale. *See Daybreak Construction Specialties, Inc. v. Saghatoleslami,* 712 P.2d 1028 (Colo.App.1985) (although mechanics' liens were extinguished by foreclosure sale, purchaser voluntarily paid the liens after acquiring title and therefore could not recover the payments); *cf. Jordan v. Lone Pines, Ltd.,* 41 Colo.App. 152, 580 P.2d 1273 (1978) (when foreclosure sale of real property is subject to a valid lien it is enforceable against the property but not as a personal obligation); *Young v. Golden State Bank,* 39 Colo.App. 45, 560 P.2d 855 (1977).

■ As to the trial court's award of attorney fees pursuant to the terms of the time-share contracts, such an award is plainly contemplated by the agreements. On remand, if the trial court determines that the contracts have been ratified, then plaintiffs, as prevailing parties, would be entitled to their reasonable attorney fees incurred in enforcing the contract.

### III.

Assuming the validity of the contracts, the trial court determined that they represented a transfer of an interest in real property. Accordingly, the court reasoned that because the notice of public trustee sale expressly stated that it was subject to any interest in the property created by the unrecorded time-share contracts, plaintiffs were entitled to seek specific performance as a remedy.

Defendants contend that the trial court erred both in determining: (1) that the time-share contracts created a definite interest in real property and (2) that specific performance was an appropriate remedy. Because these issues may arise on remand, we will address them. We conclude that no interest in real property was transferred by the contracts, but that specific performance is not necessarily unavailable as a remedy.

### A.

■ The trial court relied solely upon the Colorado Condominium Ownership Act, § 38–33–101, et seq., C.R.S. (1982 Repl.Vol. 16A), to conclude that the time-share contracts created a time-share estate in real property. Section 38–33–110(5), C.R.S. (1982 Repl.Vol. 16A) states that a time share estate is either an interval or time-span ownership interest in a condominium unit. *See Board of County Commissioners v. Colorado Board of Assessment Appeals,* 628 P.2d 156 (Colo. App.1981). The Adobe Inn, however, was never converted to condominium ownership. Therefore, the Colorado Condominium Ownership Act is not controlling.

■ Furthermore, although there may be circumstances in which the purchase of a

time-share contract not governed by the Colorado Condominium Ownership Act may nonetheless create an interest in real property, that is not the case here. To the contrary, the contracts here explicitly indicate that no transfer of real property was intended. Instead, what plaintiffs purchased pursuant to the time-share contracts was a right to use an unspecified unit at the motel for two, two-week periods each year for 25 years, provided payment of an annual maintenance fee was made.

Specifically, the contracts do not provide for the right to reserve any particular unit, and, although the purchaser received the right to use the unit during specified seasons of the year, the contracts did not guarantee that the right to use could be exercised during any particular recurrent two-week periods. Also, as previously mentioned, the contracts did not give the purchaser the right exclusively to possess the unit; if the purchaser failed to reserve the unit or to occupy the unit during the reserved period, the motel had the right to use the unit for its own purposes.

█ Such rights of use, sometimes referred to as "membership interests," which do not entitle the purchasers to exclusive use of any particular unit, for any particular annual period, do not transfer any interest in real property. *See State v. Carriage House Associates*, 94 Nev. 707, 585 P.2d 1337 (1978); *cf.* §§ 38–33–110(8)(a) and 38–3–110(8)(b), C.R.S. (1982 Repl.Vol. 16A) ("Time-span estate" includes, *inter alia*, "an exclusive right to possession and occupancy of the unit during an annually recurring period of time"); *Cal–Am Corp. v. Department of Real Estate*, 104 Cal.App.3d 453, 163 Cal.Rptr. 729 (1980) (membership interest which grants right exclusively to possess an unspecified resort unit during the member's specific annual period is an interest in real estate in the nature of a lease).

Moreover, the notice of public trustee sale merely stated that sale was subject to: "any interest in and to subject property, *if any*, by virtue of unrecorded timeshare documentation" (emphasis added). Because no interest in the motel property was created by the time-share contracts, defendants, as purchasers, did not take on any obligation to honor the contracts.

## B.

█ Because the time-share contracts did not create an interest in real property, the trial court erred in assuming that specific performance was the proper remedy for enforcement of the time-share contracts. *See Globe Drilling Co. v. Cramer*, 39 Colo.App. 153, 562 P.2d 762 (1977) (specific performance is a proper remedy for enforcing an interest in real estate).

█ However, although the trial court erred in assuming the propriety of specific performance, that remedy is not necessarily inappropriate under the circumstances. Specific performance may be directed by a court of equity when the party seeking relief cannot be fully compensated at law because of the nature of the property or its speculative value. *See Omaha Lumber Co. v. Co-operative Investment Co.*, 55 Colo. 271, 133 P. 1112 (1913); *Keith v. El–Kareh*, 729 P.2d 377 (Colo.App.1986).

█ Defendants contend, however, that even if specific performance is an applicable remedy, it is not available to plaintiffs under the principle of "unclean hands." Specifically, defendants argue that those who would seek equity must do equity and because plaintiffs purchased the time-share contracts from themselves at a time when they knew that the motel property would be lost to foreclosure as a result of non-payment under the purchase agreement, they are not entitled to an equitable remedy.

█ We agree that one who has himself or herself engaged in improper conduct regarding the subject matter of the cause of action may, as a result, lose entitlement to an equitable remedy. *See Berkeley Metropolitan District v. Poland*, 705 P.2d 1004 (Colo.App.1985). Accordingly, if, on remand, the trial court determines that plaintiffs' contracts are enforceable, it must then determine if plaintiffs' purchase of the time-share contracts constitutes knowing, improper conduct that would deprive them of an equitable remedy. *See Micciche v. Billings*, 727 P.2d

367 (Colo.1986); *In re Marriage of Allen,* 724 P.2d 651 (Colo.1986).

The summary judgment denying defendants' counterclaim for a deficiency and the related award of attorney fees in favor of plaintiffs are affirmed, the judgment for specific performance and the related award of attorney fees are reversed, and the cause is remanded for further proceedings consistent with this opinion.

HUME and BRIGGS, JJ., concur.